### HEATH et al. v. HELMICK.
No. 11904.

United States Court of Appeals
Ninth Circuit.
March 4, 1949.

Ernest R. Utley and J. Geo Ohanneson, both of Los Angeles, Cal., for appellants.

Leslie S. Bowden and J. M. Clements, both of Los Angeles, Cal., for appellee.

Before MATHEWS and HEALY, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

This controversy arises out of the bankruptcy proceeding initiated by the filing of a voluntary petition by Melanie Douillard Woodd, resulting in adjudication August 29, 1945.

On December 31, 1946, trustee presented a petition to the court to the effect that certain real property belonged to the bankrupt estate, that the Heath estate and one Knapp claimed an interest therein, but that the claim was invalid. An order to show cause issued to claimants. Based upon an extended hearing, where all parties were represented, the referee held that the real property was an asset of the estate and claimants had no interests therein. The order was dated May 3, 1947. The Honorable C. E. Beaumont heard the petition to review this order, and on December 1, 1947, confirmed the orders and adopted the findings and conclusions of the

referee.[1]  The estates of Heath and Knapp[2] appeal, but Woodd does not.

The first question is as to the right of the referee to exercise summary jurisdiction over the property upon the petition of the trustee, after the discharge of the bankrupt and the closing of the estate. Neither of these propositions is squarely presented by the record, but each must be dealt with in order to solve questions formally argued in the briefs.

■  The estate was closed.  The referee reopened the cause for administration of the assets not fully administered.  This has been a ground for reopening under the statutes ever since the adoption of the Bankruptcy Act.[3]  There has been some question as to whether it can be done by referee or court.  The question is a procedural one and has not been raised here. But the District Judge has now approved the reopening and has found specifically that there were grounds therefor.  If a petition had been presented to him for reopening and he had granted it and referred the cause to the same referee for hearing and had affirmed the present result, no error would have been present.  While it is by far the preferable practice for such petitions to be heard by a judge, in this instance there is no error.

■  The bankrupt was discharged July 3, 1946.  But the discharge of a bankrupt has never been held to preclude the trustee from recovering or taking control of the property belonging to the estate and in which, therefore, the creditors have an interest.  Since the bankrupt has not appealed, the sole question is whether the property was owned by or in possession of the bankrupt when the petition for adjudication was filed.

The fee simple title to the property in question had formerly been in bankrupt Woodd and she had remained in continuous possession thereof.  It was discovered during the course of the hearing that the property in question had been deeded to bankrupt Woodd, and the deed taken was recorded October 18, 1946, although it had been made and delivered September 12, 1946, two days after closure.  The referee found, "The said real property was at the date of the bankruptcy proceedings an asset of the bankruptcy estate."  Taken in connection with the evidence herein set out, this is a finding of ultimate fact.[4]  The summary jurisdiction of the referee was founded.  Possession either in bankrupt or an agent, subject to control of bankrupt, on the date of the filing of the petition for adjudication, establishes the right of the court to deal with claims thereto summarily.  It is only when possession is at that date held by an adverse claimant that the trustee must resort to plenary suit in another forum.  Once the fact of possession of bankrupt is established, the court determines all other claims to the property. Judge Healy, writing for this court in Bank of California, National Association v. McBride, 9 Cir., 132 F.2d 769, 771, says:

"The court had summary jurisdiction in the premises if, when the bankruptcy petition was filed, the property was actually or constructively in the possession of the bankrupt; or if at that time possession was held by a person who made no adverse claim to the property, or whose adverse claim was determined on inquiry to be merely colorable."

■  Since it was thus correctly found that the property was an asset of the bankrupt estate, the referee had the power to consider the claims of the attorneys, Heath and Knapp.  He correctly found that neither had any interest.  The evidence supports his finding and conclusions.

The referee made specific findings, from which, supplemented by the testimony in the record, a complete picture may be had. Woodd had owned title to this real property, including the Virginia Avenue parcel here in suit and the Glendale tract, in 1940. Emile A. Douillard, a nephew, together with other relatives, had brought an action

---

[1] For preliminary matter, see Heath v. Helmick, 9 Cir., 173 F.2d 156.

[2] Knapp died also after the trial before the referee.

[3] 11 U.S.C.A. § 11, sub. a(8).

[4] The finding of ultimate fact was sufficient.  Klimkiewicz v. Westminster Deposit & Trust Co., 74 App.D.C., 333, 122 F.2d 957, certiorari denied, 315 U.S. 805, 62 S.Ct. 633, 86 L.Ed. 1204; see also Brown Paper Mill Co. v. Irvin, 8 Cir., 134 F.2d 337, 338.

against Woodd in the state court to recover on account of her dealings with her mother's estate. Heath and Knapp were her attorneys in that litigation. The judge had indicated judgment would be against her. She considered this outrageously unjust but there were indications that such a judgment would be affirmed on appeal. She had money to pay her attorneys, Heath and Knapp, at the time, but she held a conference with them over their fee. There may have been some slight disagreement over the amount. Heath and Knapp agreed to bring a friendly suit and attach all her property, including the Glendale and Virginia Avenue parcels, before judgment could be entered by her relatives. This arrangement was secret. Heath and Knapp assigned their claims to Hovey, who was her confidant and physician, and action was brought in his name on April 11, 1940, and proceeded as if it were adverse. The properties were therein attached. Emile A. Douillard received separate judgment, foreshadowed by the remarks of the judge above mentioned, April 25, 1940, as did the other plaintiffs in that proceeding.

Judgment for Heath and Knapp in the name of Hovey was entered July 8, 1941, and execution issued. On August 3, 1942, the judgments of Douillards were affirmed by the Supreme Court of California.[5] On September 8, 1942, the Glendale property was sold under execution on the Hovey judgment. On March 15, 1943, Emile A. Douillard purchased the Glendale property at sheriff's sale on execution on his separate judgment. He then brought suit against Knapp, Heath, Hovey and Woodd to quiet title to this particular parcel on the ground that there had been a fraudulent transfer. This issue was decided against him. Douillard v. Smith, 70 Cal.App.2d 522, 161 P.2d 378. The particular property here under consideration (Virginia Avenue) was sold on sheriff's sale on the same execution April 12, 1943, and purchased by Dr. Hovey. The referee found that, after this last sale and before the fil-

ing of the petition for adjudication, Heath and Knapp, the attorneys, Dr. Hovey, the physician, and Woodd, the bankrupt, entered into a secret agreement that the property so purchased should be held by Hovey until the remainder of attorney fees were paid and until Woodd was discharged in bankruptcy, when the property was to be returned to bankrupt, "and in the meantime said bankrupt was to have the use and control of said property."

The evidence is uncontroverted that Dr. Hovey did not at the time have any interest in the claim or the judgment. He did not put up any money. When the sale was consummated, he was admittedly the holder of the bare legal title. Furthermore, it is admitted by all that he was trustee. Although there is no specific finding as to the value of the property (Virginia Avenue), there is the suggestion in the opinion of the referee that it was of much greater value than the original judgment.

In due course, the petition was filed, discharge was granted and the estate was closed. Thereupon, the property was reconveyed to Woodd through her nephew and the deed recorded as above outlined. The proceeds of resale of Glendale property and many other sums went into the hands of Dr. Hovey. Some of this he appropriated himself. The overwhelming weight of evidence supports the findings that the attorneys were paid in full before the petition in bankruptcy was filed. But the actual fraud proven and found in the final secret agreement is sufficient to vitiate the transaction.

The badges of fraud with relation to creditors were early marked in the English mercantile community. Because of the pattern which such action took, the more notorious were denounced in the earliest enactments culminating in the statutes of Elizabeth.[6] In general, as here, action of a debtor attempting to defraud creditors will be found catalogued and indexed in Coke in what has been called his restatement of the law.[7] Twyne's Case[8] is a classic which delineates many devious

---

[5] Douillard v. Woodd, Cal.App., 120 P.2d 73, affirmed 20 Cal.2d 665, 128 P.2d 6.

[6] 13 Eliz. c. 5, 27 Eliz. c. 4.
[7] Holdsworth, The Influence of Coke, Essays in Legal History, 303 ff.
[8] 3 Co. Rep. 806.

devices.[9] These mediaeval authorities are not cited as binding precedents but to show that the propensities of the human heart bent on fraud are almost standard. Yesterday, today and tomorrow, the same tortuous trail can be followed by the same blazes.

■ A conveyance with a secret reservation, even through the forms of legal sale, arouses suspicion and is void as against creditors. Any action which delays creditors by depriving them of their normal recourse is fraudulent. Action which anticipates issuance of execution in pending litigation—pending issuance of the writ, as the older authorities say—is characteristic. A favorite device is an absolute conveyance, with the debtor left in possession of the property, upon some fictitious ground. Remaining in possession to collect the rent for the holder of the legal title, as here, is such a plausible pretext. Transactions among those who stand in a confidential relationship with the debtor are subject to especial scrutiny. Attorneys, confidants, physicians and relatives, who have interests in property formerly owned by debtor, are objects of distrust. Retransfer of property after debts have been wiped out is almost proof positive of chicanery.

One or more of such badges may be explained away, but in the concentration in which these exist here, fraud is written in bold letters over the transactions.

■ The referee found the secret fraudulent agreement was made some time after the sale of the Virginia Avenue property on execution and before the filing of the petition for adjudication. There was substantial evidence to support this finding. The evidence shows that the design was fraudulent from the inception, as above noted, as to this particular property. The continuous possession by Woodd of this parcel before any litigation commenced, coupled with the retransfer and recording of the deed to her, differentiates this case from the Glendale property, which was alone involved in the Douillard litigation. When the state court failed to quiet title of Douillard to Glendale, no issue could have been decided which was binding upon this court, even if that judgment had been pleaded and proved, which was not the case. The parties are not the same. The positions are not identical. The trustee, as to property in possession of bankrupt at date of bankruptcy, as this was, is in the position of a creditor holding a lien by legal or equitable proceedings, whether a creditor actually exists or not.[10] Even if the trustee had failed in a suit to obtain possession of Glendale, this instant proceeding would not be affected. In a case where there was a finding that a transfer was not preferential, it was held not to preclude the bringing of a plenary action by the trustee to recover the property. In re Sears, Humbert & Co., 2 Cir., 128 F. 275, cited with approval in Standard Sanitary Mfg. Co. v. Momsen-Dunnegan-Ryan Co., 9 Cir., 51 F.2d 684, 685.

■ The confusion of thought on part of appellant is apparent in the ludicrous argument that the secret agreement between bankrupt and her confidential advisors and attorneys was violative of the Statute of Frauds[11] because it was not in writing and not to be performed within a year. The section referred to applies only to executory agreements. The actual transfer of this property to Woodd not only places the transaction beyond the statute but is proof positive of the "trust" for the benefit of Woodd and in fraud of her creditors. Since the agreement was executed and was fraudulent, the property is in the hands of the trustee and must be given to the creditors.

■ There is a suggestion that the referee was not justified in finding fraud. It is said that, whether the inference can be drawn from certain evidence is a question of law. But the trier of fact, who sees the witnesses is free to disbelieve them even if there is no flat contradiction. So here the referee, after he had before him the transfer of the property with the retention of possession in accordance with a secret agreement and a retransfer after

---

[9] For an enlightening discussion, see Glenn, Fraudulent Conveyances & Preferences, Vol. I, Chapter V(B).

[10] 11 U.S.C.A. § 110, sub. c.

[11] Civil Code of California, Sec. 1624, Par. 4.

discharge in bankruptcy, coupled with the withholding of the final deed from record, was compelled to make the inference of fraud as a matter of law. In any event, this court would be constrained to support the findings of a referee who saw the witnesses, where these are fully supported by the record and are concurred in by the trial court on review.[12] It would have been error for the referee to have found otherwise.

The judgment of the District Court is affirmed.

---

[12] Kimm v. Cox, 8 Cir., 130 F.2d 721; Goldstein v. Polakof, 9 Cir., 135 F.2d 45.