LY SHEW, as guardian ad litem of Ly Moon and Ly Sue Ning, Appellant,

v.

John Foster DULLES, as Secretary of State of the United States, Appellee.

No. 13808.

United States Court of Appeals, Ninth Circuit.

Dec. 30, 1954.

Rehearing and Rehearing in Banc Denied Feb. 4, 1955, and March 3, 1955.

Stanley J. Gales, Sacramento, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., Morton M. Levine, Immigration & Naturalization Service, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and MATHEWS and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

On or before November 8, 1950, the United States District Court for the Northern District of California appointed Ly Shew as guardian ad litem of a boy who called himself and claimed to be Ly Moon and is hereafter called Moon. On November 8, 1950, Moon, by his guardian ad litem, Ly Shew, instituted an action[1] in the District Court against Dean Acheson, as Secretary of State of the United States, for a judgment declaring Moon to be a citizen and national of the United States.

On or before January 11, 1952, the District Court appointed Ly Shew as guardian ad litem of a girl who called herself and claimed to be Ly Sue Ning and is hereafter called Ning. On January 11, 1952, Ning, by her guardian ad litem, Ly Shew, instituted an action[2] in

1. According to his complaint, Moon was born on October 18, 1933, and hence was an infant when his action was instituted and at all pertinent times thereafter.

2. According to her complaint, Ning was born on January 26, 1937, and hence was an infant when her action was instituted and at all pertinent times thereafter.

the District Court against Secretary Acheson[3] for a judgment declaring her to be a citizen and national of the United States.

The Secretary answered the complaints,[4] the actions were consolidated, a trial was had, an opinion[5] was filed, findings of fact and conclusions of law were stated, and on February 18, 1953, a judgment was entered denying the relief sought by Moon and Ning. From that judgment this appeal was taken on March 18, 1953.

The appeal was heard on July 16, 1954. On August 18, 1954, this court (Judge Bone dissenting) entered a judgment reversing the judgment appealed from and directing the entry of a judgment for Moon and Ning. On September 17, 1954, the Secretary filed a petition for rehearing. Upon consideration thereof, this Court (Judge Denman dissenting) has today vacated its judgment of August 18, 1954, and denied the petition for rehearing.

Jurisdiction of these actions was conferred on the District Court by 8 U.S.C. A. § 903,[6] which provided: "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. * * * "

Moon and Ning were born in China and, up to the time the actions were instituted, had not entered the United States. The Secretary therefore contends that the District Court had no jurisdiction under § 903. There is no merit in this contention. See Fong Wone Jing v. Dulles, 9 Cir., 217 F.2d 138; Chow Sing v. Brownell, 9 Cir., 217 F.2d 140; Brownell v. Lee Mon Hong, 9 Cir., 217 F.2d 143; Lee Wing Hong v. Dulles, 7 Cir., 214 F.2d 753.

Moon's complaint alleged, in substance, that he was born in China on October 18, 1933; that Ly Shew was his father; that Ly Shew was a citizen of the United States at the time of Moon's birth and had resided in the United States since July 15, 1912; and that Moon was therefore a citizen of the United States under § 1993 of the Revised Statutes.[7] Ning's complaint alleged, in substance, that she was born in China on January 26, 1937; that Ly Shew was her father; that Ly Shew was a citizen of the United States at the time of her birth and had resided in the United States since July 15, 1912; and that she was therefore a citizen of the United States under § 1993 of the Revised Statutes.[8] Thus, in effect, the complaints alleged that Moon and Ning were nationals as well as citizens of the United States; for, although all nationals of the United States are not citizens thereof, all citizens thereof are nationals thereof.[9]

---

3. In both actions, Acheson's successor, John Foster Dulles, was substituted for Acheson on April 7, 1953.

4. The complaints were called petitions.

5. Ly Shew v. Acheson, D.C.N.D.Cal., 110 F.Supp. 50.

6. Section 903 was repealed by § 403(a) of the Immigration and Nationality Act, 66 Stat. 279, 280, effective December 24, 1952. However, these actions, having been instituted before December 24, 1952, were not affected by the repeal. See §

405(a) of the Immigration and Nationality Act, 66 Stat. 280, 8 U.S.C.A. § 1101 note. The subject matter of § 903 is now covered by 8 U.S.C.A. § 1503.

7. See 8 U.S.C.A. §§ 6 and 601(g and h), now §§ 1431–1433, 1401.

8. See 8 U.S.C.A. §§ 6 and 601(g and h), now §§ 1431–1433, 1401.

9. See 8 U.S.C.A. §§ 501(b) and 1101(a)(22); Chow Sing v. Brownell, supra; Brownell v. Lee Mon Hong, supra; Law Don Shew v. Dulles, 9 Cir., 217 F.2d 146.

■ The answers denied that Ly Shew was the father of Moon and Ning, thus, in effect, denying that Moon and Ning were citizens or nationals of the United States. On the issues thus raised, Moon and Ning had the burden of proof,[10] which is to say, the burden of proving that Ly Shew was their father.

■ Moon and Ning appeared at the trial and, by their guardian ad litem, Ly Shew, introduced evidence[11] some of which tended to show that Ly Shew was the father of persons known as Ly Moon and Ly Sue Ning and that Moon and Ning were those persons. Some of the evidence so tending was uncontradicted. However, the District Court was not required to believe such evidence or to accept it as true.[12]

The District Court found: "That the persons [Moon and Ning] who call themselves Ly Moon and Ly Sue Ning and who claim to be the plaintiffs herein and who claim to be the children of Ly Shew have failed to introduce evidence of sufficient clarity to satisfy or convince this Court that Ly Shew is the natural blood father of the persons known as Ly Moon and Ly Sue Ning * * * or that the persons [Moon and Ning] who appeared before this Court claiming to be Ly Moon and Ly Sue Ning are in truth and fact Ly Moon and Ly Sue Ning." Thus, in effect, the District Court found that Moon and Ning had not sustained their burden of proof.

■ However, it appears from the District Court's opinion,[13] that the District Court proceeded on the theory that the burden of proof resting on Moon and Ning was different from and heavier than the ordinary burden of proof resting on plaintiffs in civil actions—a theory which was and is untenable.[14] We hold that Moon and Ning's burden of proof was the ordinary one. As to whether they sustained that burden, we express no opinion.

The judgment is vacated and the causes are remanded with directions to make findings as to whether Ly Shew was the father of Moon and Ning, such findings to be made in the light of this opinion,[15] and thereupon enter such judgment as may be proper.

DENMAN, Chief Judge (dissenting).

I. *The Denial of Due Process and Need for Rehearing En Banc.*

The proceeding before us is the consideration of a petition for rehearing. Instead, the majority opinion and decision treat it as a petition *for reversal* of our then existing decision *without hearing* and *without reply.* The majority's decision is in gross violation of the principles of due process to which Ly Shew is entitled. *It should be reviewed en banc.*

We decided this case with a reversal ordering judgment to be rendered for Ly Shew, requiring the admission of his son and daughter to join their par-

10. Fong Wone Jing v. Dulles, supra; Chow Sing v. Brownell, supra; Brownell v. Lee Mon Hong, supra; Law Don Shew v. Dulles, supra; Bauer v. Clark, 7 Cir., 161 F.2d 397; Elias v. Dulles, 1 Cir., 211 F.2d 520.

11. The evidence introduced by Moon and Ning consisted of the testimony of eight witnesses (Moon, Ning, Ly Shew and five others) and ten exhibits (Nos. 1–3 and 7–13).

12. Mar Gong v. Brownell, 9 Cir., 209 F.2d 448; Chow Sing v. Brownell, supra; Law Don Shew v. Dulles, supra. See also Lee Sing Far v. United States, 9 Cir., 94 F. 834; Woey Ho v. United States, 9 Cir., 109 F. 888; Quong Sue v. United States, 9 Cir., 116 F. 316; Easton v. Brant, 9 Cir., 19 F.2d 857; Heath v. Helmick, 9 Cir., 173 F.2d 157; National Labor Relations Board v. Howell Chevrolet Co., 9 Cir., 204 F.2d 79, affirmed in Howell Chevrolet Co. v. National Labor Relations Board, 346 U.S. 482, 74 S.Ct. 214; Wigmore on Evidence, Third Edition, § 2034; 32 C.J.S., Evidence, § 1038, pages 1093–1099.

13. Ly Shew v. Acheson, supra.

14. Mar Gong v. Brownell, supra; Chow Sing v. Brownell, supra; Lee Wing Hong v. Dulles, supra. These decisions, it should be noted, were subsequent to the judgment here appealed from.

15. Cf. Mar Gong v. Brownell, supra; Chow Sing v. Brownell, supra.

ents and their sister in the United States. Dulles filed a petition for rehearing. Our Rule 23 does not require such a petition to be served on the successful litigant nor for a brief or other opposition to it. All Ly Shew is required to do is to wait to see whether the petition is granted. If granted, Ly Shew for the first time is required to meet the contentions and authorities upon which the rehearing is granted.

The petition consists of several contentions never considered in the opinion in favor of Ly Shew. It relies upon over eighteen federal decisions, never cited in Dulles' brief on appeal.

Upon these contentions and cases the majority opinion reverses our decision in favor of Ly Shew, without granting him any opportunity to reply to them. No clearer case of denial of due process is conceivable.

II. *The Failure to Consider the Facts as in Mah Gong v. Brown, 9 Cir., 209 F.2d 448, in View of the District Court's Statement that Under the Usual Burden of Proof it is Required to Decide for Ly Shew.*

Assuming, however, that a rehearing en banc is not granted, I further dissent from the opinion's failure to consider the appeal under the principles established in our decision in Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 453, where, as here, the opinion directed the lower court to make findings as to paternity "in the light of what is said in this opinion."

In the Mar Gong case we gave an extended review of the evidence and the trial court's disposition thereof, covering nearly five pages of the Federal Reporter. Such a review here is of greater importance since the district court's opinion is based upon a too heavy burden of proof on Ly Shew, the court stating that if the ordinary burden of proof is applied it will be compelled to "issue a rubber stamp decree admitting the plaintiffs" in this case and many other cases. It is only by the wrongful application of the clear and convincing

rule, held invalid in the Mar Gong case, that the court found against Ly Shew and his children, that finding being: "II. The persons who claim to be plaintiffs have failed to introduce evidence of *sufficient clarity to satisfy* or *convince* this Court that Ly Shew is the natural blood father of persons known as Ly Moon and Ly Sue Ning, or that the persons who appeared before this Court claiming to be plaintiffs Ly Moon and Ly Sue Ning are in truth and fact Ly Moon and Ly Sue Ning." (Emphasis supplied.)

The evidence upon which the district court states that applying the ordinary rule of burden of proof it is required to "admit plaintiffs," the boy and the girl, to citizenship to join their citizen sister in the United States amply supports the court's conclusion. As in the Mar Gong case all of it was given through interpreters. It is as follows:

1. Ly Shew testified that appellants were his children. He said Ly Moon, the boy, was born while he was in China on a visit and that Ly Sue Ning, the girl, was being carried by his wife when he departed. Cancelled checks that he had sent to China for family support were offered but were excluded, I think erroneously, but not affecting the present decision.

2. Ly On testified that he was admitted to the United States as a citizen and as the son of Ly Shew in 1947. He testified that he entered with another brother and his sister, Ly Shue Ngor. He testified that he lived with appellants and otherwise treated them as brother and sister.

3. In court appellants and Ly On simultaneously drew diagrams of the Chinese village where they lived. No conflict here appeared.

4. Ly Moon and Ly Sue Ning both testified they were Ly Shew's children, clearly relevant in connection with the other testimony. Fulkerson v. Holmes, 117 U.S. 389, 397, 6 S.Ct. 780, 29 L.Ed. 915.

5. Leong Yen Way, not a member of the family, was admitted to the United

418

States in 1949. At the time of the trial, he was serving as a soldier in the United States Army. He testified that he visited appellants' family in China in 1948. He testified that he was given a package by them to bring to the father in the United States. He identified appellants as the same persons he had seen in China.

6. Ly Shue Ngor testified that she regarded Ly Shew as her father and Ly Moon and Ly Sue Ning as her brother and sister. She testified that when she left China in 1947, Ly Sue Ning was eleven and Ly Moon fifteen years of age. She said she helped rear the appellants, as an older sister would.

The government's brief does not quarrel with the evidence adduced by appellant, except to the extent that it had attempted to cast doubt on Ly Shue Ngor's credibility by raising doubts as to issues collateral to the issue of her statement of Ly Shew's paternity, a matter not affecting the validity of the others and her testimony. Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 451.

Upon this evidence and the district judge's statement that he is required to admit the children, we reversed and ordered the district court to enter "a judgment in their favor." This we were required to do as what is "just under the circumstances", 28 U.S.C. § 2106, providing:

"The Supreme Court or any other court of appellate jurisdiction * * may remand the cause and direct the entry of such *appropriate judgment,* decree, or order, or require such further proceedings to be had *as may be just under the circumstances.*" (Emphasis supplied.)

Such an order should have been given in the majority's present decision. However, since it is not, further consideration should be given to the erroneous statement of the district court of the factors he states as controlling in consideration of the evidence.

As a suggestion of the likelihood of perjury of these Chinese witnesses[1] the court points out: "A survey of the 716 cases here shows that 95% of the plaintiffs claim to have been born in Kwang Tung Province and 62% in the Toy Shan District of Kwang Tung Province. * * *." It fails to point out that Kwang Tung Province is the only one of the 18 provinces of the great area of China which surrounds the British city, Hong Kong, into which the nearby children of American parents could easily enter, thus freeing themselves from Bolshevik China. None of the other seventeen provinces has such a foreign city on its borders.

Further, the district court stresses, as indicating the likelihood of perjury, the fact that [110 F.Supp. 56]: "An examination of 354 of the 716 complaints shows 367 of the plaintiffs to be males and 39 to be female." It is difficult to see how this is applicable to the instant case where of the two persons for whom declaration of citizenship is sought one is a girl and the record shows that another girl, her sister, had been previously admitted as such a citizen and is now living with her father, Ly Shew.

Undoubtedly there has been much perjury in cases of Chinese seeking to prove their nationality. However, there is another factor regarding the large number of males their parents seek to bring to the United States, which seems not to have been considered in the reported cases. This is the high status of the son in the centuries' established social relations of the Chinese[2] and the low

1. This court has stated in reversing in Lau Hu Yuen v. United States, 85 F.2d 327, 330, that:

"In certain communities prejudices are said to exist favoring the integrity of testimony of white persons, particularly the so-called 'Nordics,' against the red-skinned Indian, the yellow Chinese and Japanese, the dark-complexioned Mediterranean, and darker African. Though its reassertion be trite, we take judicial notice that neither the sense of color nor historical racial antagonisms afford criteria of integrity of the mind."

2. LaTourette, "The Chinese" (1946) 678: "Closely associated with the family sys-

status there of the female child,[3]—this entirely apart from the much higher earning capacity of the male child. That American fathers of Chinese-born children prefer to leave their daughters in China is no evidence that the testimony concerning the birth of their sons is perjured.

Those who ironically comment on the power of male procreation by American-born Chinamen mating with their wives in China seem ignorant of the above facts.

III. *The Wrongful Invocation of a Religious Doctrine "in Every Sense" affecting the Decision.*

Finally, as one of its reasons for deciding against Ly Shew's paternity of this boy and this girl, the court states: "* * * In *every sense,* so far as I am concerned, this is God's Country." (Emphasis supplied.)

One wonders whether the omniscient and omnipotent Creator of the Universe, the God of the Christo-Hebraic religion of the majority of American people, has given their country such an exceptional and apparently exclusive position, as distinguished, say, from Great Britain, from which the laws controlling our democracy are derived; or whether China is no longer one of God's countries, where the "golden rule" was stated by Confucius five hundred years before the birth of Christ.

"In every sense" a judge's religious beliefs *should not* consciously affect his attitude towards his witnesses or his interpretation of the law.

The district judge is very able and it is regrettable that the above introduction of religion in this case cannot be treated as a casual irrelevancy, instead of applying "in every sense," that is, not only to the burden of proof but with its effect on the minds of parties and witnesses—say one shown to be an agnostic or an atheist or a humanist, the latter believing in the brotherhood of man only and not in a god. The Supreme Court's refusal of certiorari on October 14, 1954, made final the decision of the Supreme Court of New Jersey in Tudor v. Board of Education, 14 N.J. 31, 100 A.2d 857, 868. There Chief Justice Vanderbilt's opinion held that the distribution

---

tem, and possibly as one of its corollaries, have been the relations between men and women and the position of women. The ceremonies in honor of ancestors have constituted a cornerstone of the Chinese family. **Male progeny has been necessary if these were to be continued.** For this reason boys have been regarded as more valuable than girls. **To the high esteem for men** other factors have contributed. From the economic standpoint boys have been preferable. Remaining in the family as they do, they are producers who throughout their working lives aid its prosperity. On the other hand, after marriage a girl is lost to the family which has been to the expense of rearing her. The centuries-old doctrine of **yin** and **yang** has made for the higher status of men, because the **yang,** associated with good fortune and all that is desirable, has been identified with the male, and the **yin** the element of darkness and evil, is female. * * *" (Emphasis supplied.)
Encyclopedia Britannica, 14th Ed., Vol. 5, p. 524:

"Religion.—The three great religions of China are Confucianism, Taoism and Buddhism. The special feature of local religion is ancestor worship, though Taoism incorporates much that belongs to primitive religions. In China the dead form an important part of every household. A third son is always a third son, even if his elder brothers are dead. The head of the house, living or dead, is always the head of the house. To his tomb his descendants come, and they have mortgaged much of their scanty acres in erecting grave mounds which must never be ploughed till the family is forgotten. Against such a calamity every precaution is taken by adopting children when sons fail." In the instant case there was no evidence of adoption.

3. Encyclopedia Britannica, 14 Ed., Vol. 5, p. 516:
   "* * * Especially notable is its vigorous unsparing attack on the inferior status of women, child betrothals and costly expenditure on funeral rites. * * *"
   LaTourette, "The Chinese" (1946) 674:
   "* * * In the case of poorer families, daughters may be sold into what is little better than slavery, or even into prostitution."

of the King James Bible in the public schools violated the First Amendment made applicable to the States by the Fourteenth. A part of the testimony quoted in the opinion to support the decision is " *'and the people who don't accept any religion would feel that the school is actually trying to teach the religion through this means.'* " (Emphasis supplied.)

Finally, all these cases of the admission of Orientals should be governed by what this court has repeatedly stated in Chinese citizenship cases, that the "right to citizenship is a priceless thing" to the person seeking to establish it. Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120, 122, and the statement by the Supreme Court in another Chinese citizenship case, Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010, that "* * * It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

The courts of this circuit should not find themselves subject to the criticism of having such an anti-Oriental attitude as we made in our opinion on General DeWitt's deportation and imprisonment of some 70,000 American citizens of Japanese descent in Acheson v. Murakami, 9 Cir., 176 F.2d 953.

The petition for rehearing should have been denied and our judgment in favor of Ly Shew should have remained undisturbed.

On Petition for Rehearing and Petition for Rehearing in Banc.

Feb. 4, 1955.

Before DENMAN, Chief Judge, and MATHEWS and BONE, Circuit Judges.

PER CURIAM.

Ly Shew filed on January 28, 1955, a document which is, in effect, a petition for rehearing and a petition for rehear-ing in banc. The petition for rehearing is denied.

Under our Rule 23, having denied the petition for rehearing, we are not required to consider the petition for rehearing in banc. The latter petition is therefore ordered dismissed.

DENMAN, Chief Judge (dissenting).

I dissent from the denial of the petition for rehearing in division on the grounds stated in my dissenting opinion herein filed on December 30, 1954. I agree that we have no power under Rule 23 to consider the petition for rehearing in banc or treat it as a suggestion for such a rehearing. Since Ly Shew has the right, under Western Pacific Railroad case (Western Pacific Railroad Corp. v. Western Pacific Railroad Co.), 345 U.S. 247, 73 S.Ct. 656, 97 L. Ed. 986 and Rule 23 denies that right in this usual case of the denial of the petition for rehearing by the division, the rule is invalid.

Since there is no applicable rule, the court en banc could be required to consider a petition for rehearing en banc made directly to it by Ly Shew. Western Pacific Railroad case, supra, at pages 249 and 268 of 345 U.S. at page 657 of 73 S.Ct.

On Petition for Rehearing and Petition for Rehearing in Banc.

March 3, 1955.

Before DENMAN, Chief Judge, and MATHEWS and BONE, Circuit Judges.

PER CURIAM.

Appellant Ly Shew filed on January 28, 1955, a document which is in effect a petition for rehearing and a petition for rehearing in banc. Treating the petition for rehearing in banc as a suggestion such as is contemplated by our Rule 23, the suggestion is denied. The petition for rehearing is also denied.

The orders entered February 4, 1955, are hereby vacated. The mandate is-

sued on February 10, 1955, is hereby recalled.

DENMAN, Chief Judge (dissenting).

I dissent from the order of the court reading:

"Appellant Ly Shew filed on January 28, 1955, a document which is in effect a petition for rehearing and a petition for rehearing in banc. Treating the petition for rehearing in banc as a suggestion such as is contemplated by our Rule 23, the suggestion is denied. The petition for rehearing is also denied.

"The orders entered February 4, 1955, are hereby vacated. The mandate issued on February 10, 1955, is hereby recalled."

Under our rule 23, reading so far as pertinent,

"All petitions for rehearing shall be addressed to and be determined by the court as constituted in the original hearing.

"Should a majority of the court as so constituted grant a rehearing and either from a suggestion of a party or upon its own motion be of the opinion that the case should be reheard en banc, they shall so inform the Chief Judge. The Chief Judge shall thereupon convene the active judges of the court and the court shall thereupon determine whether the case shall be reheard en banc."

the court, *as a court*, has no jurisdiction to consider the appellant's suggestion for a rehearing en banc. This because the rule provides that it can be considered only where a petition for rehearing in division is "granted". Here it was denied.

The division had properly so held in its order of February 4, 1955, as set aside. That order read:

"Ly Shew filed on January 28, 1955 a document which is, in effect, a petition for rehearing and a petition for rehearing en banc. The petition for rehearing is denied.

"Under our Rule 23, having denied the petition for rehearing, we are not required to consider the petition for rehearing en banc. The latter petition is therefore ordered *dismissed*." (Emphasis supplied.)

The two judges, as judges and not as a court, have the right under 28 U.S. C.A. § 46(c) to move the court en banc for a rehearing there or against it. The Chief Judge made such a motion for a rehearing en banc but withdrew it, because Ly Shew had made such a motion. Since under our Rule 23, the division has no power to consider Ly Shew's motion, he is entitled to have his motion considered by the court en banc, the Supreme Court so holding in Western Pacific Railroad case, 345 U.S. 247, at page 262, 73 S.Ct. 656, at page 664, 97 L.Ed. 986, in ordering the party's motion for a rehearing en banc to be considered en banc after stating:

"Finally, it is essential to recognize that the question of whether a cause should be heard en banc is an issue which should be considered separate and apart from the question of whether there should be a rehearing by the division."

Here under Rule 23 the division has no power to consider a motion for a rehearing en banc "separate and apart" from the consideration for rehearing by the division. It can only be considered *in connection with* the rehearing by division, that is, only when the division grants a rehearing by it.

All this can be avoided and the court en banc relieved of considering petitions for a rehearing by parties by amending the above provisions of Rule 23 to read:

"A party's suggestion for rehearing by a division or his suggestion for a rehearing en banc, shall be addressed to and be determined by the division in which the case is pending.

"Should a majority of the division in which the case is pending, either from a suggestion of a party or upon its own motion, be of the opinion that the case should be re-

heard en banc, they shall so inform the Chief Judge. The Chief Judge shall thereupon convene the active judges of the court and the court shall thereupon determine whether the case shall be reheard en banc."