220 F.2d 537
 UNITED STATES of America, ex rel. DONG WING OTT, Appellant,
v.
Edward J. SHAUGHNESSY, District Director of the New York
District of the Immigration and Naturalization
Service, or such other person, if any,
as may have in custody one
Dong Wing Ott, Respondent.
UNITED STATES of America, ex rel. DONG WING HAN, Appellant,
v.
Edward J. SHAUGHNESSY, District Director of the New York
District of the Immigration and Naturalization
Service, or such other person, if any,
as may have in custody one
Dong Wing Han, Respondent.
 Nos. 183, 184, Docket 23307, 23308.
 United States Court of Appeals, Second Circuit.
 Argued Feb. 9, 1955.
Decided March 15, 1955.
 
 Elmer Fried, New York City, for appellants.
 J. Edward Lumbard, U.S. Atty., for the Southern Dist. of N.Y., New York City (Matthew A. Campbell and Harold J. Raby, Asst. U.S. Attys., and Lester Friedman, Atty., Immigration and Naturalization Service, New York City, of counsel), for respondent.
 
 
 1
 Before CLARK, Chief Judge, HINCKS, Circuit Judge, and SMITH, District judge.
 
 
 2
 SMITH, District Judge.
 
 
 3
 Relators, foreign born Chinese who sought admission to the United States pursuant to Section 1993, Revised Statutes, 8 U.S.C.A. §§ 1431-1433, as sons of a native American citizen father and a legally resident alien mother, appeal from an order of the District Court for the Southern District of New York dismissing writs of habeas corpus issued on their behalf to test the validity of the administration determination, affirmed on appeal to the Board of Immigration Appeals, that their claims to citizenship were not established, and to test the validity of the order for their deportation.
 
 
 4
 Relators had applied for admission to the United States and hearings were held at Ellis Island July 15 and 22, 1952 before a Board of Special Inquiry. The applicants were represented by counsel. The answers to the usual questioning of the applicants and their witnesses as to family history and background in China were consistent and had they been relied on by the Board it would have found the claimed relationship satisfactorily established.
 
 
 5
 However, the Board received in evidence without objection reports of the U.S. Public Health Service purporting to show ABO blood grouping and MN blood typing results of blood taken from applicants and their claimed parents. There was also received in evidence a pamphlet by Dr. Wiener, entitled Blood Grouping Tests in the New York Courts, reprinted from United States Law Review, December 1936, containing tables from which, together with the blood test reports, the Board found that neither applicant could be a son of the claimed parents.
 
 
 6
 The blood test reports having been signed by Dr. Cameron, of the U.S. Public Health Service, the Board of Immigration Appeals ordered the hearings reopened so that he might be questioned. He appeared and testified on the methods employed at his laboratory, that the tests had been made by a technician named Monica, qualified to take the tests, and that Dr. Cameron was not qualified as an expert in genetics to interpret the tests for their bearing on the issue of heredity.
 
 
 7
 The Board on April 22, 1953 adhered to its earlier ruling.
 
 
 8
 Appeal from this decision was dismissed by the Board of Immigration Appeals on July 31, 1953.
 
 
 9
 Writ of habeas corpus was issued by one of the judges of the District Court for the Southern District of New York, September 14, 1953.
 
 
 10
 The District Court, Murphy, D.J., on December 11, 1953, ruled that giving conclusive effect to a learned treatise on the question of paternity over direct and competent evidence to the contrary, without producing the author or some similar expert, although conveniently available, was error sufficient to sustain the writ unless the hearing should be reopened and additional evidence taken.
 
 
 11
 It was also held that opportunity for proof of discriminatory use of blood grouping tests against Chinese alone should be accorded.
 
 
 12
 The writ was ordered sustained unless within 20 days the hearing before the Board of Special Inquiry should be reopened. D.C., 116 F.Supp. 745.
 
 
 13
 The hearings were reopened, Dr. Wiener, a competent expert produced, and his opinion received that the result of the tests precluded the establishment of the paternity claimed by appellant, Dong Wing Han. As a result, the Board found that neither appellant had established the claimed parentage, since both had testified they were blood brothers. Another appeal to the Board of Immigration Appeals followed. The appeal was dismissed. On motion of the government, Judge Murphy then dismissed the writs of habeas corpus. From that order no appeal was taken, but new habeas corpus proceedings were brought, dismissed without opinion, no proof being offered, and these appeals followed.
 
 
 14
 Appellants contend that the blood tests taken were involuntary and therefore admission in evidence of the results a violation of their rights to due process.
 
 
 15
 Their testimony at the hearing of January 8, 1953, however, established beyond question that the tests were taken voluntarily. Both testified that they made no objection of any kind to submitting to a blood test at the request of the Immigration Service, Han adding that his father asked him to go along with him.
 
 
 16
 Appellants further contend that they were denied due process by the failure of the government to produce on demand Monica, the technician who had tested the blood and assigned to the samples the groupings and types on which the expert opinion as to non-paternity was based. His production, unless waived, might well be held essential to the competency of the tests as evidence. See United States ex rel. Lee Kum Hoy v. Shaughnessy, D.C.S.D.N.Y., 115 F.Supp. 302. The tests were admitted in evidence without objection from appellants' counsel, however, which in itself was a waiver of objection to their competency.
 
 
 17
 The question was tentatively raised at the later hearing before the Special Inquiry Officer, but the request for production of Monica was not pressed.
 
 
 18
 At the hearing before the Special Inquiry Officer, at the conclusion of the direct testimony of Dr. Wiener before beginning cross examination, counsel for appellants asked for the production as a witness of Monica. The Special Inquiry Officer requested counsel to reserve any material important to his case until he completed cross examination, unless the material was necessary to the cross examination, saying, 'You may reserve any motions you deem necessary. I take it you will make this request again after you are through.' Counsel replied, 'Thank you, and I hope, if I forget, I hope you will remind me.' R. p. 63-64, record of hearing 1/26/54.
 
 
 19
 At the close of the hearing that day, adjournment was granted to February 5, 1954 for testimony of the mother and father and any other purpose counsel might deem expedient within the scope of Judge Murphy's order.
 
 
 20
 At the continued hearing February 5, counsel was asked whether he desired to present any other evidence on the issues posed by Judge Murphy's order. He answered, 'Except the demand made at our last hearing for the production of certain evidence contained in the files under exclusive control and within your exclusive knowledge.'
 
 
 21
 The defect in the proceedings, if such it was, due to the nonproduction of the technician Monica, must be held to have been waived. Moreover, opportunity for re-testing was offered, but declined on several occasions.
 
 
 22
 The further contention of appellants that the Board's giving conclusive weight to the blood test evidence in the face of competent testimony to the contrary is a denial of due process is without substance.
 
 
 23
 Blood test evidence is by statute competent evidence in the Courts of New York if it establishes non-paternity. N.Y. Civil Practice Act, § 306-a,[1] Commissioner of Welfare of City of New York ex rel. Tyler v. Costonie,277 App.Div. 90, 97 N.Y.S.2d 804. Under Rule 43(a), Fed.Rules Civ.Proc. 28 U.S.C.A.,[2] it is therefore competent in the Courts of the United States sitting in the State of New York. While originally blood test evidence was hesitantly received by the courts, there seems no question today but that, on proper evidence in its support, it may be held conclusive under New York law. Commissioner of Welfare of City of New York ex rel. Tyler v. Costonie, supra. Fowler v. Rizzuto, Sp. Sess., 121 N.Y.S.2d 666, and see 1 Wigmore, Evidence, 3 Ed.1940, Section 165(a).
 
 
 24
 Alternatively, the evidence was admissible under Rule 35, F.R.C.P., Beach v. Beach, 72 App.D.C. 318, 114 F.2d 479, 131 A.L.R. 804, and see Note of the Advisory Committee on Rules of Civil Procedure on Preliminary Draft of Proposed Amendments, May, 1954, Rule 35.
 
 
 25
 The remaining ground of appeal is that the blood tests are unconstitutional as a violation of due process because applied discriminatorily to applicants solely of Chinese race.
 
 
 26
 This ground must fail for two reasons, first, that it is not established that they are applied solely to Chinese, and second, that there is sufficient evidence of unusual circumstances relating to applicants born in China during the period in question to justify a requirement of such additional evidence on the part of such applicants if available.
 
 
 27
 Such a classification based on the lack of reliable written governmental records of birth and parentage, difficulty of access to the areas from which the claimed family groups come, and long absences from the family group of the citizen father who is an identifying witness, are circumstances justifying the distinction as one not based on race or color.
 
 
 28
 No lack of due process appears in the case of these appellants, who have had ample opportunity to meet the competent evidence unfavorable to them, and have failed to do so.
 
 
 29
 Affirmed.
 
 
 
 [1]
 Section 306-a of the New York Civil Practice Act is as follows: 'Wherever it shall be relevant to the prosecution or defense of an action, or wherever it shall be relevant in any proceeding pending in a court of record, the court, by order, shall direct any party to the action or proceeding, and the child of any such party and the person involved in the controversy to submit to one or more blood grouping tests, the specimens for the purpose to be collected and the tests to be made by duly qualified physicians and under such restrictions and directions, as to the court or judge shall seem proper. Whenever such test is ordered and made, the results thereof shall be receivable in evidence only where definite exclusion is established. The order for such blood grouping tests may also direct that the testimony of such experts and of the persons so examined may be taken by deposition pursuant to this article.'
 
 
 [2]
 Rule 43(a), F.R.C.P. provides in part as follows: '* * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. * * *'