**CHOW SING, by his Guardian ad litem, Chow Yit Quong, Appellant,**

v.

**Herbert BROWNELL, Jr., as Attorney General of the United States, Appellee.**

**No. 13746.**

United States Court of Appeals Ninth Circuit.

June 25, 1956.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and SOLOMON, District Judge.

DENMAN, Chief Judge.

Chow Sing appeals from a judgment of the District Court in a declaratory judgment suit denying his claim to be declared an American citizen as the son of Chow Yit Quong, admittedly an American citizen. The grounds of his appeal are (A) that the District Court applied the wrong burden of proof and (B) that even assuming the court construed the evidence under the usual burden of proof in civil cases, it erred in holding that the burden had not been satisfied.

This case was tried in December, 1952, and a first judgment rendered on February 17, 1953. This court reversed, 217 F.2d 140, holding the District Court had considered the facts on an excessive burden of proof, that is, by clear and convincing evidence. It vacated the judgment and ordered the court to determine whether Chow Sing had proved he was the son of Chow Yit Quong applying the ordinary burden of proof in civil cases, that is, whether the preponderance of the evidence supports the petitioner's contention. The District Court had made the same ruling in the case of Ly Shew v. Dulles, also reversed and remanded. 9 Cir., 219 F.2d 413. Both cases were considered at the hearing by the District Court.

(A) *The District Court applied the usual burden of proof in civil cases.*

Appellant's contention is based on statements made by the District Judge at a hearing called after these cases were sent back to him for new findings. In essence,[1] the District Judge stated that

Jackson & Hertogs, Joseph Hertogs, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

1. The remarks complained of are as follows:
"The Court. That is a problem, of course, I don't think any appellate court fully realizes, the difficulty of relating these cases to the ordinary standard of cases. And because of the difficulty of the Court in evaluating the testimony, that brought about my statement of the rule which I thought should be applied to this type of case.

\* \* \* \* \* \* \*

"And since we have in a great number of similar cases of a similar kind found that there has been fraud and chicanery and lying and everything else involved in them, we approach them with caution. It is because of the general circumstances of this and similar cases. It makes it difficult to appraise the testimony.

"It's all done in a foreign language. And the difficulties involved in appraising

the application of a lower standard of proof did not change his problem. He had been unable to determine from the evidence whether appellants were the children of American citizens alleged to be their fathers. It is contended that this indicates that the District Judge continued to insist on "clear and convincing evidence."

Appellant's argument is based on a misconception of the meaning of proof by a preponderance of the evidence, the ordinary burden of proof in a civil action, as distinguished from proof by clear and convincing evidence or proof beyond a reasonable doubt. Despite the terms used to describe two of these standards, the burden of proof is not simply a matter of the *quantity or type* of evidence offered. More significant is the *degree of belief* required of the trier of fact to make a finding.

█ When the District Judge stated that he was unable to determine from

the testimony given through interpreters, where rarely you have anyone who is able to speak firsthand as to the facts and speak our language.

\* \* \* \* \* \* \*

"So that is the reason why I came to that conclusion in this case. I just wasn't convinced by the evidence in this case that, in the shape it was in, that the evidence satisfied me that these two youngsters were the children of Ly Shew.

"It is true I imposed a different standard of proof. That is, I suggested, declared according to my view, a different standard of proof. But the problem still remains just the same.

"If I were to make a finding now that Ly Shew was the father—I say that in all fairness to counsel for the Plaintiff— if I were to make a finding and I would be prepared to say so in a supplemental finding, if I were to make a finding now and find as a finding of fact that Ly Shew was the father of these two children, I would be making the finding not of my own volition but under some command from another judge.

"Now, if another judge who has the power to make a decision wants to make a decision to that effect, I have no quarrel with it, because another judge might decide it another way. But I don't see how I could in justice and in good conscience make a finding of fact because

the evidence whether appellant was the child of the citizen alleged to be his father, he was not applying the "clear and convincing evidence" burden of proof. He was merely stating that he did not believe that it was more probable than not that this fact was true. In other words, appellant had not carried *any* of the three possible burdens of proof. We hold he complied with the mandate of our court as to the burden of proof.

(B) *The District Court did not err in holding that Chow Sing had not maintained his burden of proof he was Chow Yit Quong's son.*

The evidence is nearly all through interpreters though the witness who could speak English occasionally corrected the interpreter's English words. It is as follows:

1. Chow Yit Quong (Chow Sing's alleged father) came to the United States in 1923. He has made several trips to China, and he testified that Chow Sing

some other judge tells me. I should make a finding of fact. It has no reason to it at all. There is no reason behind that at all.

"If another judge wants to direct that judgment be entered, that's a different matter. It might be well within the power of the Court to do that.

\* \* \* \* \* \* \*

"The Court (interposing): I have just as much difficulty in proceeding upon the theory of making a finding that he is the father as I have that he is not the father. The same difficulty that existed before exists. And I haven't been helped any by the Appellate Court. I mean, it doesn't make much difference about the standard.

\* \* \* \* \* \*

"The Court: I don't know what you can do about that. One may decide it rightly or wrongly according to a third person's lights, and that still doesn't change the standards that are involved.

\* \* \* \* \*

"It still is a proceeding to declare citizenship. Now, it doesn't make any difference what kind of standard you apply. I think the Court has to decide whether the person has presented sufficient evidence to show he is an American citizen. That is all.

"Mr. Gale [one of the attorneys for appellants]: That is it."

is his son who was born in China in 1934 while he was there. He testified that he lived with his son in China while there on visits, the last time being from 1946 to 1950. Chow Yit Quong's income tax returns for 1942, 1943, 1944 and 1945, which claimed Chow Sing as a dependent, were put in evidence together with a Selective Service Questionnaire in which the same claim was made.

It was stipulated that a blood test of Chow Yit Quong and Chow Sing showed that they could be father and son.

On cross-examination Chow Yit Quong testified that he had nine sons and one deceased daughter. He was unable to remember the birthdate of any of them except that of Chow Sing.

He stated that Chow Sing was not present at the wedding feast at Canton given to celebrate his second marriage, although Chow Sing did attend a second feast at the village where the family lived. He said that Chow Sing first saw the second wife in the village. Chow Yit Quong was asked to explain his alleged son's testimony before the Immigration Service that he did attend the wedding feast and saw the second wife for the first time in Canton. Chow Yit Quong said that Chow Sing must have been confused.

Chow Yit Quong testified that his first wife, Chow Sing's alleged mother, and his daughter, Chow Sing's alleged sister, had died in Kwantung, Po Village. Chow Sing had stated to the Immigration Service that they had died in Macao. There was a similar discrepancy as to the place of burial.

There was also a discrepancy between Chow Yit Quong's testimony and the statements of Chow Sing given to the Immigration Service as to the construction of the living quarters in China occupied by the family. A similar discrepancy was developed as to the construction of sleeping quarters where the father and son stayed for a brief period in 1947.

2. So Tak, a United States citizen, testified that he knew the alleged father, Chow Yit Quong, and that he had introduced Chow Sing as his son while So Tak was visiting China in 1947. Chow Yit Quong and Chow Sing were living in the same place as father and son. However, Chow Yit Quong had begun to make arrangements to bring Chow Sing to the United States in 1946, a year before So Tak encountered them in China.

3. Chow Sing testified that Chow Yit Quong was his father. The same discrepancies developed on the cross-examination of Chow Yit Quong were again brought out. Other discrepancies between Chow Sing's testimony and his former statements to the Immigration Service were established.

4. Chow Sam, who was admitted to citizenship as the son of Chow Yit Quong, testified that Chow Sing was his brother. He claimed that he and Chow Sing had lived together with the family in China until 1940 when he came to the United States.

The discrepancies concerning such things as the place of the death of Chow Yit Quong's wife and Chow Sing's alleged mother, the place of her burial, and the details of the wedding feast relate to matters which father and son would consider of some importance and about which one would expect agreement.

We hold that the District Court's finding that Chow Sing has not carried his burden of proof and established that he is the son of Chow Yit Quong is not clearly erroneous.

The judgment is affirmed.