LEE WING GET, as father and next friend of Lee Sik Quen and Lee Suey Ngor, both minors, and Lee Sik Quen and Lee Suey Ngor, Plaintiffs,

v.

John Foster DULLES, as Secretary of State of the United States, Defendant.

Civ. No. 12564.

United States District Court
E. D. New York.

July 11, 1957.

See also 18 F.R.D. 415.

James C. Thomas, New York City, for plaintiffs.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Eastern District of New York, Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for defendant.

BRUCHHAUSEN, District Judge.

This action for declaratory judgments was commenced by Lee Wing Get as alleged father and next friend of Lee Sik Quen (male) and Lee Suey Ngor (female), pursuant to the provisions of Section 503 of the Nationality Act of 1940 (8 U.S.C.A. § 903), now repealed, and substantially included in Section 360 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1503).

The young man applied to the American Consul in Canton, China, in 1948 for a document attesting that he was a foreign born son of an American citizen, pursuant to Revised Statutes, Section 1993 (2 Stat. 153), which was in effect until May 24, 1934, 8 U.S.C.A. § 1401(a)(3), and provided:

"All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States."

Subsequently, the young lady joined her alleged brother in his application, and applied to the American Consul, then in Hong Kong, for a similar travel document.

After it was determined by the Consul, on May 21, 1951, that the said children could not establish their identity under the said statute, this action was commenced on their behalf, and by them individually, on April 4, 1952, and they were admitted at the Port of New York, under bond, on May 19, 1952, for the purpose of testifying in this case.

The decision of Judge Westover in Mar Gong v. McGranery, D.C.S.D.Cal., 109 F.Supp. 821, is informative as to the pattern of Chinese immigration cases, while the decision of Judge Goodman in Ly Shew v. Acheson, D.C.N.D. Cal., 110 F.Supp. 50, records the difficulties encountered in trying such cases. Yet, oddly enough, the determinations of both of these learned judges, sitting in California and having considerable experience with this subject, were reversed. See Mar Gong v. Brownell, 9 Cir., 209 F.2d 448; Ly Shew v. Dulles, 9 Cir., 219 F.2d 413.

The plaintiffs' witnesses resembled a family unit. There were no outsiders.

There is little doubt that the three older brothers, Lee Gam Foon, Lee Sik Horn and Lee Sik Farn, are the sons of Lee Wing Get; that they were admitted as citizens commencing in 1936 in the same manner as it is sought to admit the plaintiffs herein. The second son referred to the first son as his "big brother" although both of them were in their middle thirties.

The three older boys resided with their uncle Lee Sik Yun (also know as Lee Wing Shuck) who then and now owned and resided over a laundry at 200 East 50th Street, New York, New York. There is little doubt that Lee Sik Yun is the older brother of Lee Wing Get, the alleged father herein, and that both of them are the sons of Lee Bing Poy, born in this country in 1880, and through whose original citizenship all of the parties connected with this case have derived, or claim to derive citizenship.

Lee Wing Get's three oldest sons have apparently been respectable citizens. They have gone to school, served in the Army, entered business, married and settled down. The third son, Lee Sik Farn, is an engineer. While an effort was made to discredit his identity, and

show that he was really Lee Sik Pang, one of the sons of the uncle, Lee Sing Yun, such an impersonation seems illogical. A similar immigration case is pending on behalf of said Lee Sik Pang, in the neighboring Federal District Court for the Southern District of New York, and it is most unlikely that the principal character in that case would jeopardize his standing by coming into this court, under the scrutiny of the Immigration and Naturalization Service, and impersonate someone else.

There were certain discrepancies about the recent wedding ceremony of Lee Sik Farn which took place at the True Light Lutheran Church in Chinatown, and which was followed by a reception at the China Lane Restaurant, also in Chinatown. These descrepancies, however, seem to be more apparent than real.

The uncle, Lee Sik Yun, seemed to have a very prominent and paternal part in the festivities, the arrangements, and even the publicity, photographs and invitations, while the alleged true father does not seem to have even been in evidence. Yet it is undisputed that there is a certain Lee Sik Farn who was admitted to this country in 1939 as the son of Lee Wing Get. It is to be assumed that an immigration file, probably containing photographs, is available to the Government on this point. There is also the service record of one Lee Sik Farn, also containing photographs, which, it is assumed, is also available to the Government.

The Government also questioned the fact that the party purporting to be Lee Sik Farn named his uncle, rather than his father, as the beneficiary of his pension rights in connection with his employment with the New York City Transit Authority.

The interpreter volunteered that ancestor worship is a culture, though not a religion, in China, although this could be considered common knowledge, and the Government did not question it. Apparently this culture manifests itself in respect, almost reverence, for elders, something often lacking in this country. In that light, the puzzling activities of these people seem more explainable.

Lee Sik Yun is the oldest son of Lee Bing Poy, and the oldest family representative in this country. In addition, he seems to be the stable one. Lee Bing Poy, the grandfather, while still comparatively young, returned to the land of his ancestors in 1924 while his sons came to this country to support him. They can do it on very little, but their loyalty is constant. Eventually the ways of Western civilization prevail and the off-spring come to this country to join their fathers. Yet loyalty remains, to the point where the first son directs operations in this country while all of the descendants acquiesce.

The Chinese are highly civilized, but it can hardly be denied that their ways are oriental, their religion pagan, while our culture is the product of Western Christianity. If the Chinese Exclusion Acts seemed arbitrary, they were realistic and in keeping with self-preservation. In the face of this, the cases demonstrate the hardship that true Chinese-Americans have in getting to this country, and the cunning deceit that imposters resort to for that purpose.

This case could represent both extremes.

 It is well established that the burden of proof upon the plaintiffs in these actions is the ordinary one resting upon plaintiffs in a civil action. Ly Shew v. Dulles, supra; Wong Gong Fay v. Brownell, 9 Cir., 224 F.2d 717; Chow Sing v. Brownell, 9 Cir., 235 F.2d 602.

The Consul in Hong Kong was certainly beset with the task before him. At that particular time, no doubt an avalanche of applicants from the interior of China, where there are no birth records, no marriage records, civil or religious, poor communications, language difficulties, etc., flooded his office as they were fleeing from Communist occupation in the wake of twenty years of Japanese imperialism.

And yet, difficult as his task was, this alone should not bar American citizens

from their natural birth right. The only solution would seem to be to keep working at the task until developed skills overcome the momumental task. The Consul would have the advantage of improving the technique with each case until eventually prevaricators and imposters could be detected in almost routine fashion. This seems to be the only way to cope with the situation, for the Chinese people, whether rightly or wrongly excluded in the past, will continue to resort to whatever means they can to gain admittance, while they are aided by the shadowy background that prevails in their favor. Yet it is incumbent upon the Immigration Service to meet this challenge in fairness to our Western cousins, from whose civilization we have derived benefit, and who have been precluded from availing themselves of any machinations by the advancement and maturity of that very civilization.

While the consular file contains discrepancies in the testimony given by the plaintiffs, and that of their two alleged cousins, children of the uncle, Lee Sik Yun, namely Lee Sik Pang (who has the immigration matter pending in the Southern District) and Lee Sik Yuen, evidence relating to the ancestral home where they all lived, schooling, the trip from Get Hing Village to Hong Kong, their meeting after said trip, the alleged sister and brother herein was fairly consistent. Then too, most of the matters pertained to minute details that may not have been retained too clearly from childhood.

On the trial an effort was made to discredit the testimony of Lee Suey Ngor through the testimony of her brother, Lee Sik Quen, since he unequivocally stated that he came to Hong Kong before her. But Lee Suey Ngor did not previously state that she came to Hong Kong with her brother, but only that it was her brother who brought her to the home of a Mr. Lee Gam Ngen, whose family she resided with when she came from the interior.

However, Lee Suey Ngor was vague about her stay with the Lee Gam Ngen family in Kowloon, a suburb across the bay from Hong Kong. She could not give too much detail as to this family, the business that the father was engaged in, the relationship of this family with her family, although by this time she was a young lady, was attending school, continued her education here and eventually married an engineer.

The fanfare accompanying the wedding of her alleged brother, Lee Sik Farn, is boldly contrasted to her unheralded nuptials, which neither of her alleged parents attended, although she was the only daughter.

■ In addition, a blood grouping examination excluded her as the daughter of Lee Wing Get. Such evidence has been held to be admissible, as well as competent and convincing, if not conclusive. United States ex rel. Dong Wing Ott v. Shaughnessy, 2 Cir., 220 F.2d 537; Lue Chow Kon v. Brownell, 2 Cir., 220 F.2d 187. The plaintiffs' counsel does not even attempt to cope with this argument.

■ The Government uses this finding to defeat the parenthood claim of Lee Sik Quen (as to whom the blood grouping test was compatible), by arguing that since both plaintiffs claim to be brother and sister, and since the blood grouping test excluded Lee Suey Ngor, then Lee Sik Quen could not be the son of Lee Wing Get, citing the District Court opinion in Lue Chow Kon v. Brownell, S.D.N.Y., 122 F.Supp. 370.

Plaintiffs do not claim, however, nor is it necessary for them to allege that they are brother and sister, but only that they are the children of Lee Wing Get, an American citizen, and it is only an inference therefrom that they are thus brother and sister. Since it is not a vital contention, establishing the contrary would not seem to defeat their claim, per se.

While such a showing on the Government's part may have some bearing on the credibility and good faith of plaintiff's claim, as to Lee Sik Quen, a reasonable answer, if not a complete one, would

be contained in the memorandum of counsel for plaintiffs, i. e.:

> "Here a brother calls a girl his sister because he was informed by his parents that the girl is his sister. Must a boy have his sister blood-tested before he can call her his sister?"

■ The Government has conceded the nationality of Lee Wing Get, but argues that the plaintiffs have not proven the citizenship of their alleged grandfather, Lee Bing Poy, from whom, as stated, everyone connected with this case claims citizenship. It argues that there never has been a judicial determination of the citizenship of the grandfather, Lee Bing Poy, or of the father, Lee Wing Get, and that any former concessions made by the Government in that regard should be given no greater weight than its subsequent determination that plaintiffs herein are not the persons they claim to be. The difficulty with that argument is that the citizenship of Lee Bing Poy or Lee Wing Get is not in question herein, but, in fact, the Government's position herein is predicated upon such citizenship, and the failure of plaintiffs to establish their identity as the children (or grandchildren) of such citizens. Moreover, the former concessions by the Government in the several immigration matters that have arisen from the original claimed citizenship of Lee Bing Poy by native birth, (i. e. entry of his three sons, their several visits to China, entry of his grandsons) would not only constitute an estoppel to deny such citizenship now, but in a sense, these concessions would be better documentation of citizenship than the average American has had.

It might be noted, in passing, that Lee Wing Get accurately testified as to the absence of his father, Lee Bing Poy, from this country, i. e., thirty-two years, which corresponds to documentation submitted in the passport file, in evidence.

■ Finally, the Government contends that the Court herein has no jurisdiction since a passport application was denied them on the grounds that they failed to establish themselves as citizens of an American father, and not on the grounds that they were not citizens of the United States with which Section 903 was concerned. It cites Dulles v. Lee Gnan Lung, 9 Cir., 212 F.2d 73; Lee Hung v. Acheson, D.C.Nev., 103 F.Supp. 35. The Government admits that Chin Chuck Ming v. Dulles, 9 Cir., 225 P.2d 849, and Fong Nai Sun v. Dulles, 9 Cir., 219 F.2d 269, hold otherwise.

Those cases, however, involved situations wherein applications for a passport were delayed or ignored, rather than denied, and the question was whether a right of citizenship had been denied until there was an actual adverse determination. In this case, however, the plaintiffs have actually been admitted for the purpose of prosecuting this lawsuit, which is an admission by the Government that their claimed right was denied under former Section 903.

The new section in the controversial McCarran-Walter Act (8 U.S.C.A. § 1503) has obviated these difficulties by providing separate procedure for those within and those without the United States.

■ Judgment is directed in favor of Lee Sik Quen and judgment is denied as to Lee Suey Ngor.