CHIN WING GWONG, by his next friend Chin Bark Keung, Plaintiff,

v.

John Foster DULLES, Secretary of State of the United States, Defendant.

CHIN WING DOR, by his next friend Chin Bark Keung, Plaintiff,

v.

John Foster DULLES, Secretary of State of the United States, Defendant.

Civ. A. Nos. 1482, 1483.

United States District Court
D. Rhode Island.

Feb. 24, 1956.

James E. Fitzgerald, Boston, Mass., Thomas F. Vance, Jr., Providence, R. I., for plaintiff.

Joseph Mainelli, U. S. Atty., Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

These are two actions under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903* in each of which the plaintiff seeks a declaratory judgment that he is a citizen of the United States. The plaintiffs claim to be brothers and the sons of an American citizen, Chin Bark Keung, of Cranston, Rhode Island. The parties have stipulated as to certain facts, viz.: that the plaintiff, Chin Wing Gwong, was born in Tse Ten Village, Toyshan District, China, on February 2, 1937; that the plaintiff, Chin Wing Dor, was born in the same village on August 6, 1933; that Chin Bark Keung, who plaintiffs claim to be their father, is a citizen of the United States, his citizenship having been determined in habeas corpus proceedings in Montreal, Canada, on November 14, 1933; that each of the plaintiffs was a resident of Hong Kong at the time of the trial of these actions; and that the passport file of each plaintiff together with the documents annexed thereto might be admitted into evidence as an exhibit.

Apart from the contents of the passport file the only testimony introduced at the trial in behalf of the plaintiffs was the testimony of Chin Bark Keung, their alleged father, and his brother, Chin Bock Fung, given through an interpreter. The testimony of each, punctuated as it was by frequent and extended exchanges in Chinese between the witness and interpreter, was at times difficult to understand and unsatisfactory. However, appreciating the language difficulties presented, I do not feel that I should, and do not, attribute to the two witnesses the same motives for hesitancy or any inconsistencies in their testimony as I might ordinarily in the case of witnesses able to understand and speak the English language.

Chin Bark Keung testified that he first came to live in the United States in 1928; that he married Ngoon Shee on February 16, 1927 in Tse Ten Village in China; that three sons were born of this marriage, i. e., Chin Wing On, on December 24, 1927; Chin Wing Dor, one of the plaintiffs, on August 6, 1933 and Chin Wing Gwong, the other plaintiff, on February 2, 1937; that all of said sons were born in Tse Ten Village. He further testified that he returned on two occasions to China; on the first occasion he arrived in China on November 12, 1932, and left there on September 16, 1933; that he was present in Tse Ten Village when Chin Wing Dor was born; that he left the United States again on April 11, 1936 for China, visited his wife, was present when Chin Wing Gwong was born, and on July 7, 1937 returned to the United States. He testified further that on a few occasions he had sent money to his wife for the support of his family. He testified also that when he returned to the United States on September 16, 1933 he told the immigration officials at Montreal of the birth of a son while he had been in China, and further that on his return in 1937 he told the officials at Seattle of the birth of a second son while he had been in China. He identified certain photographs of his wife and the plaintiffs, and testified that both of the plaintiffs were his sons born of his mar-

* Now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

riage to their mother. Under cross-examination he testified that he had no certificate attesting his marriage to the mother of the plaintiffs and that he had never recorded the birth of either of the plaintiffs with the American Consulate. He admitted that he had never been photographed with his wife and their children or with any of them and that he had not seen either of the plaintiffs since 1937. He also admitted that he had at the request of consular officials submitted to certain blood tests in 1952 and again in 1954.

Chin Bock Fung testified that he is a brother of Chin Bark Keung and that he has been in the United States since 1925; that he returned to Tse Ten Village in 1930 and remained there a year; that at that time, although he lived in the house next to that of the mother of the plaintiffs, he did not learn of the existence of the alleged son of Chin Bark Keung claimed to have been born on December 24, 1927. He testified that he again visited China in 1937 at which time he learned of the existence of the first son who, he says, was then away from the home but that he saw the plaintiffs there. He identified certain photographs as being those of the plaintiffs whom he saw in the home of the wife of Chin Bark Keung. Under cross-examination he admitted that he did not know if any of his brother's children had died after September 9, 1938, when he left China. He further stated that he had never registered any of the births of his own children with the American Consul.

The passport file of the plaintiffs, introduced by the defendant, disclosed that the plaintiff, Chin Wing Dor, filed on June 18, 1951, an application for a passport for himself and Chin Wing Gwong to travel to the United States for permanent residence as the sons of Chin Bark Keung, an American citizen. In support thereof he filed affidavits by Chin Bark Keung wherein the latter deposed that he was the father of the applicants for passports.

The passport file shows that Chin Wing Dor also filed certain letters, cancelled checks and remittance receipts for monies alleged to have been sent to Ngoon Shee or Chin Wing Dor by Chin Bark Keung prior to the filing of the applications for passports. It also shows that the plaintiffs and their alleged mother were later interviewed separately by an examiner of the consulate who reported that there were no significant discrepancies in their stories as to place of birth, relationship, etc. Subsequently, on March 28, 1952, the plaintiffs and their alleged mother were directed to report to one Dr. J. W. Anderson, of Hong Kong, for a blood test. This was made, according to the file, on March 29, 1952.

On March 31, 1952, the file discloses that the Consul General requested the Immigration and Naturalization Office at Boston, Massachusetts, to arrange for a blood test of plaintiffs' claimed father, Chin Bark Keung.

The letter making this request referred to Boston file No. 2500/7326 (being that of Chin Bark Keung) and stated that any information in the files of the Immigration and Naturalization Service bearing upon his citizenship and identity would be of value to the writer. A blood test of Chin Bark Keung was taken under the supervision of the United States Public Health Service on May 8, 1952. The report thereof and a résumé of Chin Bark Keung's trips and family history were forwarded by the Immigration and Naturalization Service, according to its letter of October 28, 1952, to the Consulate General at Hong Kong on June 18, 1952, but duplicates of said reports were nonetheless enclosed with said letter. The passport file contains a copy of this report of the blood tests purportedly received in Hong Kong on November 6, 1952. It does not contain, however, a copy of the résumé of the trips or the family history which was apparently sent not only with the letter of October 28, 1952, transmitting a copy of the blood test report, but also with the earlier letter of June 18, 1952.

This blood test report stated that Chin Bark Keung had type M blood.

Although the plaintiffs had as early as April 19, 1952, by letter to the American Consul, called attention to the fact that they had submitted to a blood test by Doctor Anderson on March 29, 1952, and requested approval of their applications and wrote along similar lines to the American Consul, at later dates, there is no report in the files of the blood test by Doctor Anderson. There is, however, a notation in the files as of October 21, 1952, to the effect that the plaintiffs were sent on that date to a Doctor Vio for a blood test. The file contains a certificate by Doctor Vio that he examined the plaintiffs and their alleged mother on October 22, 1952, with the following results:

| | | |
|---|---|---|
| Chin Wing Dor | — | Type MN |
| Chin Wing Gwong | — | Type M |
| Ngoon Shee | — | Type M |

On November 19, 1952, the plaintiffs were advised by the examiner that since the blood of Chin Bark Keung was Type M one of the plaintiffs must be an imposter. He warned them if they did not tell him who of them was the imposter he would be required to deny each of their applications. Despite this assertion and warning, the plaintiffs insisted that neither of them was an imposter. Under date of November 28, 1952, the report of the consular investigation concludes with a finding that because of the results of the blood tests the claim of Chin Wing Dor was fraudulent and that substantial grounds exist for suspecting that the claim of Chin Wing Gwong is fraudulent. On the same day these conclusions were approved by the Vice-Consul and the plaintiffs were advised that in the light of these findings their requests for documentation to the United States were denied.

The sole testimony offered by the defendant was that of Doctor Allen Richardson Jones, an expert in the field of hematology, who made a second blood test of Chin Bark Keung on April 17, 1954. He also found him to be of Type M blood. As an expert he testified that if Chin Wing Dor had Type MN blood, he could not be the son of Chin Bark Keung and Ngoon Shee if both parents had Type M blood. He testified that blood tests of the sort involved herein exclude the possibility of paternity and are conclusive if properly conducted. He stated most emphatically, however, that the tests must be conducted with extreme care by a qualified expert and that the possibility of error in their performance was a very dangerous and worrisome element.

■ Cases of this sort present peculiar difficulties to the trier of the facts. In this type of case, as in all civil actions, the burden is upon the plaintiffs to prove their cases by a fair preponderance of the evidence. Lue Chow Kon v. Brownell, 2 Cir., 220 F.2d 187; Ly Shew v. Dulles, 9 Cir., 219 F.2d 413.

■ There is a complete lack of documentary evidence to support the claim of the marriage of the alleged parents and the births of the plaintiffs. The testimony establishes that no official records of births or marriages were kept in China, at least during the times involved herein. In the last analysis, apart from the blood tests in Hong Kong, to which I shall later refer, the determination of the issues here must depend on whether the two witnesses who appeared on behalf of the plaintiffs are worthy of belief. As pointed out in Soo Hoo Yin Deep v. Dulles, D.C.Mass., 116 F.Supp. 25, this circumstance requires a careful scrutiny of the oral testimony to guard against the establishment of fraudulent claims and also against an unjust denial of the privilege of American citizenship to one rightfully entitled to it by birth. And in making such a careful scrutiny I am mindful of the pronouncement of the Supreme Court in Kwock Jan Fat v. White, 253 U.S. 454, at page 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010, that "It is better that many Chinese immigrants should be improperly admitted than that one natural born

citizen of the United States should be permanently excluded from his country."

The government contends that the plaintiffs have failed to establish by the required degree of proof that they are the sons of Chin Bark Keung. It points to and relies upon certain discrepancies in the testimony of the witnesses for the plaintiff. In my opinion these discrepancies are trivial and no more than frequently occur in the trial of cases. Despite the absence of any marriage record, I am satisfied that there was a valid marriage between the alleged parents of the plaintiffs.

I am equally satisfied that there were three sons born of that marriage. While Chin Bark Keung never reported these births to an American Consul in China, he testified that he did report them to the immigration officials on his return from his visits in 1933 and 1937. This testimony is uncontradicted. In this connection the absence from the passport file of the résumé of trips and family history forwarded by immigration officials to Hong Kong on June 18, 1952, and again on October 28, 1952, assumes a deserved significance. I can only conclude that if it contradicted the plaintiffs' claims as to notice to the immigration officials it would not be missing and that it would have been produced at the trial of these cases which have been pending since 1952. I am not willing to believe that Chin Bark Keung began in 1933 to fabricate evidence for these cases and find no reason for disbelieving his testimony as to the births of his sons.

There remains the question of identity—whether these sons are the same persons who applied for passports in 1951 under the names of Chin Wing Dor and Chin Wing Gwong. There is the identification made by their mother in Hong Kong. There are the several photographs of her and the plaintiffs which were introduced in evidence. The photographs with one possible exception were positively identified by both of the witnesses as being of either or of both of the sons of Chin Bark Keung. While I am no expert in photography, I do think these photographs resemble those of the plaintiffs included in the passport file.

But in any event, the government contends that the blood tests taken in Hong Kong and in the United States show conclusively that one of the plaintiffs is an imposter and that since they claim to be brothers neither of them can be the son of Chin Bark Keung. This argument is logical and would prevail if I am willing to accept the premise that the report of the blood test taken in Hong Kong on October 22, 1952 is reliable and conclusively deemed to be correct. I am not willing to do this. As Doctor Jones was most careful to state and to emphasize, such blood tests must be conducted by a qualified expert and must be most carefully performed, with error therein being a dangerous element. I was most favorably impressed by his testimony and was also impressed by his frankness concerning the need of extreme care in the making of such tests if they are to be accepted as proof of their reported conclusion. No evidence was offered as to the qualifications of Doctor Vio, and for no apparent reason there is no report in the file on the blood test made by Doctor Anderson on March 29, 1952, concerning which the plaintiffs wrote to the American Consul on several occasions. I am not sufficiently satisfied as to the circumstances surrounding the tests purported to have been made on October 22, 1952, or the qualifications of the person performing them to find that the result of the blood test of Chin Wing Dor, as disclosed by said report, is conclusive evidence that he is not the son of Chin Bark Keung.

After a close scrutiny of all of the testimony and exhibits, I find and conclude that the American Consul at Hong Kong denied the applications of the plaintiffs for passports on the ground that they were not citizens of the United States. I further find and conclude that

Chin Bark Keung was validly married to Ngoon Shee, that the plaintiffs are sons born of that marriage and that as sons of Chin Bark Keung the said Chin Wing Gwong and the said Chin Wing Dor are citizens of the United States.