Bergan, J.
This appeal deals with both the competency and the weight of evidence bearing on pedigree. There are two groups of claimants to the entire estate of Josephine F. Morris. One consists of the appellants who claim a relationship to the *213 decedent’s father which would make them second cousins of the decedent, technically “ first cousins, once removed ”. The other group consists of some of the respondents who claim a relationship to the decedent’s mother which would make them first cousins of the decedent. This group has succeeded before the Surrogate who has found the existence of the relationship through the decedent’s mother.
Since our statute of descent and distribution makes no provision for representation among collateral relatives of the class of cousin, if the first cousins establish their relationship to the decedent, the second cousins take no share in the estate even though they also establish their relationship. (Decedent Estate Law, § 83, subd. 10; Adee v. Campbell, 79 N. Y. 52; Matter of Oatley, 83 Misc. 655; Matter of Barry, 62 Misc. 456.)
Each group of claimants has the separate burden of proof on establishing its own relationship. (Matter of McGerry, 75 Misc. 98,101.) The weakness of the other’s case does not give tensile strength to an adverse claim of relationship. But the weakness of proof on a claim of a more closely related class is open to the attack of a claimant of a less closely related class who would step into the position of the other if his case failed.
Here the relationship of the second cousins is overwhelmingly established upon a strong chain of documentary and other proof. The proof in support of the claimed relationship of the first cousins is challenged both on its competency and on the weight to be given it. We find that it is competent, but so weak and so contradicted by other evidence that it is inadequate on the weight of the evidence to sustain the claimed relationship to the decedent.
Susan F. Coyne, one of the parties claiming to be a first cousin testified that her mother’s name before marriage had been Mary Daly; that her mother had told her when she was a child that the decedent’s mother and she were sisters; that the decedent’s mother’s name had been Ellen Daly, and she had married the decedent’s father Jeremiah O’Brien. Such a declaration of pedigree is admissible only if the person making it is shown, independently of the declaration, to be a member of the family of which the declaration is made. The leading authority on this subject is the thorough analysis by Judge Werner in his opinion in Aalholm v. People (211 N. Y. 406 [1914]). (Cf. Eisenlord v. Clum, 126 N. Y. 552.)
But while this principle is well settled, the quantum and the kind of supporting, independent proof required is not so clearly marked out. In poorly defined paths, words of generality dfó no, *214 more than point the direction. For instance, in Fulkerson v. Holmes (117 U. S. 389), Mr. Justice Woods, after noting the established rule that “ the relationship of the declarant with the family must be established by some proof independent of the declaration itself ” added that “it is evident that but slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy.” (P. 397.) This language was quoted by Vann, J., in Young v. Shulenberg (165 N. Y. 385, 388 [1901]).
Courts often use terms like “ slight proof ” when they condemn the factual foundation of findings; they seldom use them to uphold a factual structure. It is often necessary to know exactly what was done with specific facts to see clearly the area of such a rule. In Fulkerson v. Holmes (supra) a deed contained a declaration by the grantor, Samuel C. Young, of his relationship as the son of Samuel Young who had an early and undisputed title as patentee to the land in question. The declaration in the deed was that the original owner had died intestate leaving one child, the declarant.
The court regarded the following facts sufficient independent proof of the family relationship to make admissible the declaration of pedigree appearing in the deed: (a) the similarity of names of the purported father and son; (b) the fact that the original patent to Samuel Young, together with the deed from Samuel C. Young to the grantee Holmes, was found with the papers of the latter after his death; (c) the possession by Samuel C. Young of the title papers of Samuel Young; (d) the long time in which the grantees of Samuel C. Young had undisturbed possession of the land which had come through Samuel Young.
In the same pattern is Young v. Shulenberg (supra). There the declaration of family relationship also was contained in a deed which had been executed eighty years before the trial. The question considered was the sufficiency of the independent proof of the relationship of the grantor to the family to which the declaration referred. The identity of family name; the acknowledgment of the deed before a public officer; the possession of the chain of deeds by the last grantee and long unbroken possession of the property were together regarded by Judge Vann as sufficient supporting proof to render the declaration admissible (pp. 388, 389).
In these remarkably similar cases it will be noted that the independent proof of the relationship rested on a chain of circumstances, In the case that is here the independent proof rests *215 on purported statements of the deceased herself, or her husband. One such admission is a single and a rather casual remark fifty-six years before the trial attributed to the decedent by a neighbor of Susan F. Coyne that the decedent and Susan F. Coyne were cousins.
Another is a statement attributed to the decedent’s husband, who is also deceased, in the presence of the decedent, that Thomas Strain, one of the claimants here and decedent were cousins, and that their mothers were sisters, which statement was assented to by the decedent. This occurred in a polling place during a primary election some ten years or more before the trial and the testimony was by a political opponent of decedent’s husband who said he overheard the statement. Another declaration is based on testimony by the claimant Strain himself that decedent’s husband, not in the presence of the decedent, told him that the decedent and Strain were cousins, and their mothers had been sisters.
We regard this as sufficient to meet the test of “ slight ” independent evidence of the relationship of the claimants’ mother Mary Daly to the mother of the decedent in order to render proof of the declaration of Mary Daly admissible prima facie. Admissibility, apparently, is to be tested by other proof in the entire record, rather than the chronological priority of the independent proof. (See the general references to this test in Aaholm v. People, supra, p. 419.)
We are not unaware of the danger inherent in allowing the declaration of one long dead, given by one interested witness, to be corroborated by proof of other declarations by another deceased member of a family given, in part at least, by another interested witness and in part resting on casual remarks of the decedent. The ultimate protection against overreaching must lie in the insight and understanding of the trier of facts. The proof itself meets the minimum general standard which has been laid down.
We are of opinion, however, that proof thus corroborated, should have been accorded a very guarded acceptance. This is especially the case of the testimony of the claimant Susan F. Coyne who gave the only testimony of the declarations of pedigree attributed to the mother of the purported first cousins. Mrs. Coyne testified she knew of the family situation of the mother and father of the decedent. But she stoutly denied the existence of a brother of the decedent which was fully established by documentary proof. She also wrote a letter two years before the trial in which she indicated she then had no knowledge *216 of the purported relationship based on her later claim that her mother and the decedent’s mother were sisters. “ I want to be sure about Josie’s mother’s name. I think it is Crowley ”, she wrote.
The proof of relationship of the purported first cousins to the decedent, thus weakened, is effectually outweighed by other evidence in the case offered by the special guardian. The record of the decedent’s marriage in 1906 shows that the name of her mother was “ Ellen Murphy ”. There are errors in the record as to the bride’s age and her address and some dispute as to whether it shows the groom’s accurate address at the time, but it is not shown that any statement by either party of pedigrée, place of birth or marital status in the record is inaccurate, and this marriage record seems to us very strong evidence that the mother of the decedent was not Ellen Daly, and hence not related to the mother of the purported first cousins.
In addition to this, a lawyer who had been consulted by the decedent in reference to title to a piece of real property advised the decedent that a proceeding should be taken to straighten out the title and for this purpose he would have to know all her relatives. She gave the names of “ Judd or Judge ” in New York, but made no reference to the names of any of the purported first cousins. There is thus a statement attributed to the decedent herself under the formal circumstances of professional consultation, where her own interest in real property was involved in which she makes no reference to relationship to the purported first cousins. On the whole record we regard the relationship thus found by the Surrogate to be against the weight of the evidence.
The decree should be reversed on the law and the facts, and the entry of a decree ordered on appropriate new findings directing the distribution of the estate of the decedent to the appellants.
Foster, P. J., Heeeernau, Brewster and Coon, JJ., concur.
Decree reversed, on the law and the facts, with costs to all parties filing a brief, payable from the estate, and the entry of a decree ordered on appropriate new findings directing the distribution of the estate of the decedent to the appellants.
The court reverses so much of the decision and decree as purport to find that Susan F. Coyne, Lucy Strain, Julia Strain, Frank Strain and Thomas Strain were maternal first cousins of Josephine F. Morris, deceased, and were her sole distributees and entitled to her estate.
*217 The court makes the following new findings of fact:
1. That Harold Judge, Mae S. Evans, Margaret Donofrio, Anna McCarthy, Sue Maloy, Charles Maloy, John H. Maloy, Jr., Evelyn Nowak, Mary G-ernhardt, Walter J. Crowley and Mary C. Kelly, are first cousins once removed of the deceased Josephine F. Morris, and that the father of the deceased, Jeremiah O’Brien, was the brother of Hannah Judge, the grandmother of the said Harold Judge, Mae S. Evans, Margaret Donofrio, Anna McCarthy, Sue Maloy, Charles Maloy, John Maloy, Jr., and Evelyn Nowak, and the brother of James 0_’Brien, the grandfather of the said Mary Gernhardt, Walter J. Crowley and Mary C. Kelly.
2. That the mother of the decedent was Ellen Murphy, and was not the sister of Mary Strain, the mother of Susan F. Coyne, Julia Strain, Thomas Strain, Lucy Strain, and Frank Strain, and that said persons were not related to the decedent.