YOUNG AH CHOR, Appellant,

v.

John Foster DULLES, Secretary of State
of the United States of America,
Appellee.

No. 16264.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1959.

N. W. Y. Char, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Daral Gordon Conklin, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before CHAMBERS, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant and one Young Ah Kwai were born in Sun Mung Tung Village, China. In 1951 they applied for United States passports from the American Consul at Hong Kong, British Crown Colony, where they resided at the time of the applications, although both claimed the Territory of Hawaii as their permanent residence. The applications were denied. Thereafter they instituted an action in the United States District Court of Hawaii, under Section 503 of the Immigration and Naturalization Act of 1940 (Section 903, Title 8 U.S.C.A.*), for decrees adjudging them to be citizens of the United States. They both claimed to be sons of Young Yick, who was declared to be a national of the United States by the United States District Court for the District of Hawaii on May 6, 1950. During the trial the district judge took judicial notice of such judgment, but stated in his oral opinion that were he free to re-examine the citizenship of Young Yick he would be disposed to reach a different conclusion from that reached by the court in 1950. The judgment states " *  *  * Young Yick is a national of the United States by virtue of his birth at Palama, Oahu, Territory of Hawaii, on or about April 11, 1895."

The evidence offered and received on behalf of appellant in his case in chief consisted mainly of testimony of Young Yick, of appellant, and of Young Ah Kwai. Young Yick testified that he was the father of appellant and Young Ah Kwai; that they were both born in China to his wife; that he was present at the birth of Ah Kwai in China in 1920; that he returned to Hawaii in 1921 and that appellant was born in China the following year; that he next returned to China in 1934, and again in 1947; that he first saw appellant on his visit to China in

* Now 8 U.S.C.A. § 1593.

1934; that on the return trips to China he lived with his wife and children in the Chinese village; that he sent back remittances to China for the support of his family; that family photographs were sent to him by his wife and that individuals appearing in the photographs were members of his family, including Ah Kwai and appellant; that he caused Ah Kwai to come to the Hawaiian Islands in 1937, but that Ah Kwai returned to China in 1937 or 1938; and that he furnished affidavits to be delivered to the American Consul at Hong Kong in connection with the application of appellant and Ah Kwai for passports. Appellant and Young Ah Kwai testified that they were the sons of Young Yick. Family photographs purportedly depicting appellant, Young Ah Kwai, their claimed mother, and other claimed members of the family, village school records of appellant and Ah Kwai, and bank remittances sent by Young Yick from Honolulu to China purportedly for the support of his family; were received in evidence.

The deposition of Young Hon Sun was offered by appellee and received in evidence, and the deposition of one Young Chung, although taken by the appellee, was offered and received in evidence on behalf of appellant as rebuttal testimony.

The testimony of other witnesses is of no significance in respect to the questions to be reviewed on this appeal.

The testimony of Young Yick, Young Ah Kwai and appellant was taken primarily through a government interpreter.

In his findings of fact, the district judge found: "That Young Yick was declared to be a national of the United States by this Court, in Civil No. 924, in the United States District Court for the District of Hawaii on May 6, 1950; That Young Yick is married to Fung Wai Kuen; That Young Ah Kwai is the son of Young Yick and Fung Wai Kuen; That the testimony of Young Yick, Young Ah Kwai and Young Ah Chor is not credible, and no reliance can be placed upon their statements; that Young Ah Chor is not the son of Young Yick, but is the son of Young Hoin Cheung. This is established by the testimony of Young Hong Sun, the only disinterested witness in the case." As conclusions of law the court found "that Young Ah Kwai is the legitimate son of Young Yick"; that "Young Ah Kwai is a national of the United States and is entitled to a judgment declaring him to be such; it has not been established by a preponderance of the evidence that Young Ah Chor [appellant] is the son of Young Yick. It has, in fact, been established by a preponderance of the evidence that he is not the son of Young Yick"; that "Young Ah Chor is not a national or citizen of the United States and is not entitled to a judgment declaring him to be a citizen of the United States." In accordance with the findings of fact and conclusions of law, a judgment was entered declaring Young Ah Kwai to be a citizen and national of the United States, and that Young Ah Chor [appellant] is not a national or citizen of the United States and is not entitled to a judgment declaring him to be such.

The United States did not appeal from the judgment in favor of Young Ah Kwai.

The specifications of error may be fairly summarized as follows: (1) that the court erred in finding that appellant had not established his case by a preponderance of the evidence; (2) that a trial judge who is not familiar with the Chinese language is incapable of judging the credibility of witnesses by their conduct when such witnesses testify through an interpreter; (3) that the trial court erred in overruling appellant's objections to portions of appellee's cross-examination of Young Yick; (4) that the trial court erred in receiving over objections of appellant's counsel portions of the testimony contained in the deposition of Young Hon Sun, whose deposition was received on behalf of appellee.

We will consider these specifications ad seriatim.

■ 1. The law is well settled that a person who seeks a judicial declaration of his citizenship under the Nationality Act of 1940 must establish his American citizenship by a fair preponderance of the

evidence. Lau Ah Yew v. Dulles, 9 Cir., 257 F.2d 744. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., precludes an appellate court from disturbing findings of fact by a trial court unless they are clearly erroneous. Yip Mie Jork v. Dulles, 9 Cir., 237 F.2d 383, at page 385. In judging the credibility of a witness and determining the weight to be given to his testimony, the trier of the fact may consider the witness' demeanor and manner while on the stand, the character of his testimony as being probable or improbable, inconsistencies, patent omissions and discrepancies in his testimony, or between the testimony of different witnesses, contradictory testimony, his interest in the outcome of the case, his relationship to the litigants, and many other factors bearing upon the truthfulness or untruthfulness of the witness' testimony. As stated in Mitsugi Nishikawa v. Dulles, 9 Cir., 235 F.2d 135, at page 140, reversed on other grounds 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659: "The trier of fact need not accept the uncontradicted testimony of a witness who appears before it, and the demeanor of that witness may be such as to convince the trier that the truth lies directly opposed to the statements of the witness. N.L.R.B. v. Howell Chevrolet Co., 9 Cir., 204 F.2d 79, 86, affirmed sub nom. Howell Chevrolet Co. v. N.L.R.B., 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215; Chow Sing v. Brownell, 9 Cir., 217 F.2d 140, 143; Lew Wah Fook v. Brownell, 9 Cir., 218 F.2d 924; Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 449, 450, Wigmore on Evidence, Third Ed., Vol. VII, § 2034 n. 3; Zimmer v. Acheson, 10 Cir., 191 F.2d 209, 212. This rule is particularly true where the witness is interested in the outcome of the case, or where his testimony is improbable or contains patent omissions and inconsistencies. Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L.Ed. 501; Zimmer v. Acheson, supra." See also Joseph v. Donover Co., 9 Cir., 261 F.2d 812, at page 824.

■ We have carefully reviewed the entire record in this case and we are unable to say that the finding of the trial court that appellant failed to establish his case by a preponderance of the evidence is clearly erroneous.

■ 2. The Chinese interpreter whose services were used during the trial was apparently employed by the Immigration Service. Counsel for appellant stated that he had no objection to the use of such government employee and that "both sides prefer it, rather than some other interpreter." At various times during the trial the interpreter's choice of Chinese words was corrected or questioned by appellant's counsel, who appeared to be fluent in the same dialect as that used by the witnesses. Appellant makes no serious claim that the interpreter did not properly perform his duties. Appellant's contention rather is that the trier of fact (unfamiliar with the language being used by the interpreter and the witness) would be unable to determine exactly what words or phrases in the exchange of questions and answers between the interpreter and the witness caused a witness' reaction to be manifested in his demeanor. For that reason appellant argues that the credibility of a witness using a language unfamiliar to the trial court must be determined solely by the translated words of the witness and not by the manner and demeanor of the witness on the stand. While the task of a trial judge may be more difficult in cases of this type,[1] such fact does not deprive the trial court of the right to consider the manner and demeanor of the witness in determining the weight to be given to such witness' testimony. We are unable to agree with appellant's contention.

3. The cross-examination of Young Yick by appellee furnishes the source of this specification of error. We have heretofore summarized the testimony given on direct examination by Young

---

[1]. See Ly Shew v. Acheson, D.C., 110 F.Supp. 50, reversed Ly Shew v. Dulles, 9 Cir., 219 F.2d 413.

Yick. Great latitude was allowed appellee in the cross-examination of Young Yick for the reason, as stated by the trial judge, " * * * the government is at a great disadvantage, and, thus, in recognition of that, great latitude by way of cross-examination has been allowed to test the credibility of the claimants and the alleged father, all of whom testified during the trial * * * ". Over repeated objections of appellant's counsel, appellee was permitted to cross-examine Young Yick concerning his birth in the Hawaiian Islands—the identity of his parents—his being taken to China in 1897 by his parents—the ship upon which he and his parents traveled—who else accompanied them—his return to the Hawaiian Islands from China in 1921— his claim on his return to the Hawaiian Islands in 1921 of a departure record from the manifest of the steamship on which he traveled with his parents to China in 1897—his testimony before the Immigration Service when he was attempting to secure the admission of Ah Kwai to the United States in 1937—his testimony before the Immigration Service on his return from China to the Hawaiian Islands in 1948. The cross-examination developed some inconsistencies in the testimony given by the witness at these hearings before the Immigration Service, and related largely to the identification and the failure of identification by the witness of a picture of the witness' claimed father at the time of the claimed father's departure from the Hawaiian Islands in 1897. Other inconsistencies related to the house or houses in which the witness lived on his various trips to China. No inconsistencies or discrepancies were developed between the testimony given by the witness in his examination in chief in this case and his prior testimony before the Immigration officials. No inconsistencies were developed which related to the witness' testimony concerning Ah Kwai and the appellant. The trial judge permitted to be read into the record for impeachment purposes the alleged inconsistencies in the various statements before the Immigration offi-

cials. The trial court permitted the cross-examination and the impeaching statements to be received for the limited purpose only of impeaching the credibility of the witness. Appellant predicates error on the adverse rulings made by the trial judge during this cross-examination.

■ Subject to certain exceptions, the cross-examination of a witness should be limited to matters embraced in the examination in chief. Aplin v. United States, 9 Cir., 41 F.2d 495; Chevillard v. United States, 9 Cir., 155 F.2d 929. One exception to this rule is that cross-examination may be permitted for the purpose of testing the capacity of the witness to remember, to observe, to recount, and for the purpose of testing the sincerity and truthfulness of the witness. This may be done with respect to subjects not strictly relevant to the testimony given by the witness on direct examination. The extent of the cross-examination is a matter within the discretion of the trial court. United States v. Bender, 7 Cir., 218 F.2d 869; United States v. Manton, 2 Cir., 107 F.2d 834. "The extent to which cross-examination upon collateral matters shall go is a matter peculiarly within the discretion of the trial judge. And his action will not be interfered with unless there has been upon his part a plain abuse of discretion." United States v. Manton, supra, at page 845. We are unable to say that the cross-examination permitted in this case constitutes an abuse of discretion. The admission into evidence of the impeaching statements may have been error because the statements related to matters collateral and unrelated to the witness' examination in chief. Ordinarily a cross-examiner is bound by the answers of a witness on collateral matters and his answers thereon should conclude the inquiry. See Smith v. United States, 9 Cir., 10 F.2d 787. In the instant case the error, if any, in the admission of such impeaching statements was harmless.

4. Before considering appellant's fourth specification of error, it is necessary to place the witness, Young Hon Sun, and that portion of his testimony to which proper objection was made in prop-

er posture. At the time of the deposition the witness was 38 years of age. He was born in Sun Mung Tung Village, China, the claimed birthplace of appellant and Young Ah Kwai. He lived in the village until he was 18 years of age. He attended the village school for nine years, commencing at the age of six, and Young Ah Kwai was one of his schoolmates. He testified that he had never seen Young Hoin Cheung (Young Yick's brother, and the person named by the witness as the father of appellant); that he did not know where the brothers and sisters of Young Yick were born because "they belonged to an older generation"; that he did not know Young Ah Kwai's mother but he had seen her; that he had never been in the home of Ah Kwai; that he did not know whether appellant and Ah Kwai lived in the same house in the village; that he saw appellant in the village but seldom talked to him; that he did not know whether Ah Kwai's mother had children beside Ah Kwai and Young Jip; that he never discussed the composition of Young Yick's family with his father or the village elders; that he learned of Young Yick's family through Ah Kwai; that records were kept by the village elders in the ancestral hall; that there were eight ancestral halls in the village; that records were kept in the ancestral hall listing persons in the village and their children; that he had never examined or investigated any of these records; that he was interested only in his own family; and that when he was 12 or 13 years of age he learned the common knowledge in the village that appellant was the son of Young Yick's brother, Young Hoin Cheung, and that he received no further knowledge of this common knowledge in the village.

Contrary to the suggestion contained in appellee's brief, a careful reading of the complete deposition is convincing that the witness was not related to the Young Yick family by blood or affinity. The trial judge and the attorney for appellee entertained the same view. During the trial the trial court stated, "He [designating the witness] is not a family member," to which the attorney for appellee replied, "No, he is not a family member * * *." In fact, the witness was not in any sense an intimate acquaintance of the Young Yick family. There was no intimate or other association between the witness and the members of Young Yick's family except the witness' statement that he was a schoolmate of Ah Kwai. He did not know whether the family of Young Yick and Young Hoin Cheung lived in the same house "because I have never been to their home". As stated above, he did not know whether Ah Kwai and appellant lived in the same house "because I have never been to their home". He never discussed family relationships with appellant or any of the brothers of Young Yick or members of their families. The record is clear that the witness' sole contact with the Young Yick family was with Ah Kwai, as one of his schoolmates in the village school. It is likewise clear from the record that the witness was not testifying in any sense from facts based upon his own knowledge or observation.

In support of the trial court's rulings, appellee relies upon and has called to our attention only two cases. One of these cases is Fulkerson v. Holmes, 117 U.S. 389, 6 S.Ct. 780, 29 L.Ed. 915. In that case the Supreme Court held that a declaration on a matter of pedigree made by a deceased member of the family in question was admissible. The Court stated at page 397 of 117 U.S., at page 784 of 6 S.Ct.:

"The fact to be established is one of pedigree. The proof to show pedigree forms a well-settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for as in inquiries respecting relationship or descent facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion a failure of justice. Taylor on

Evidence, ed. 1872, § 571. Traditional evidence is, therefore, admissible. Jackson ex dem. Ross v. Cooley, 8 Johns., N.Y., 128; Jackson ex dem. Garland v. Browner, 18 Johns., N.Y., 37; Jackson ex dem. Bogart v. King, 5 Cow., N.Y., 237; Davis v. Wood, 1 Wheat. 6, [4 L.Ed. 22]. The rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question may be given in evidence in matters of pedigree. Jewell's Lessee v. Jewell, 1 How. 219, [11 L.Ed. 108]; Blackburn v. Crawfords, 3 Wall. 175, [18 L.Ed. 186]; Johnson v. Lawson, 2 Bing. 86; Vowles v. Young, 13 Ves. [140], 147; Monkton v. Attorney-General, 2 Russ. & Myln. [147] 159; White v. Strother, 11 Ala. 720. A qualification of the rule is, that, before a declaration can be admitted in evidence, the relationship of the declarant with the family must be established by some proof independent of the declaration itself. Monkton v. Attorney-General, 2 Russ. & Myln. 147, 156; Attorney-General v. Kohler, 9 H.L.Cas. [653] 660; Rex v. All-Saints, 7 B. & C. [785] 789. But it is evident that but slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy."

Clearly the facts of the instant case do not bring it within the rules laid down in the Fulkerson case. The witness was not a member of the Young Yick family. In any event, there was no independent proof of such relationship. In United States v. Eng Suak Lun, 10 Cir., 67 F.2d 307, it was held that to render declarations as to pedigree admissible the relationship of declarant to the family whose genealogy is under inquiry must be established by evidence or proof other than the statement of the declarant himself. In Stein v. Bowman, 13 Pet. 209, at page 218, 38 U.S. 209, at page 218, 10 L.Ed. 129, appears the following statement:

"From necessity, in cases of pedigree, hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationships which existed in its different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigree; and so is reputation, which is the hearsay of those who may be supposed to have known the fact, handed down from one to another, evidence. As evidence of this description must vary by the circumstances of each case, it is difficult if not, impracticable, to deduce from the books any precise and definite rule on the subject.

" 'It is not every statement or tradition in the family that can be admitted in evidence.' The tradition must be from persons having such a connection with the party to whom it relates, that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken. (1 Phillips, 174; [Douglass' Lessee v. Sanderson] 2 Dall. 116.)

"The declarations proposed to be proved by the witness, do not appear to have been made by members of the family, or by persons who had such connections with the deceased as to have a personal knowledge of the facts stated." See also Am.Jur. Vol. 20, § 468, page 409 et seq., and 15 A.L.R. 2d 1412.

The other case called to our attention by appellee is United States v. Mid-Continent Petroleum Corp., 10 Cir., 67 F.2d 37, certiorari denied Hosey v. Mid-Continent Petroleum Corp., 290 U.S. 702, 54 S.Ct. 346, 78 L.Ed. 603. In that case the court stated that the evidence of a witness who knows the facts of his own knowledge gained through intimate acquaintance with the family, the evidence of such witness as to his knowledge of facts so acquired is not hearsay. As we have heretofore pointed out, the witness in the instant case did not purport to

know the matters to which objection was made of his own knowledge gained through intimate acquaintance with either the Young Yick or Young Hoin Cheung families. In the same case the court stated, at page 45, "As a general rule proof of such reputation and tradition should be limited to reputation and tradition *in the family,* the genealogy of which is under inquiry." (Emphasis added) The testimony of the witness in the instant case did not purport to be based upon the reputation and tradition in the Young Yick family, the genealogy of which was under inquiry. While we recognize, as stated in the last cited case, that under exceptional circumstances testimony relating to pedigree and family tradition based upon neighbor or community reputation has been held to be admissible as an exception to the hearsay rule, the testimonial foundation for the application of such rule is completely lacking in this case. We hold that the trial court erred in admitting those portions of the deposition of the witness which we have been discussing.

The next question is, is such error prejudicial? At the conclusion of the testimony, the trial court, among other remarks, stated, " * * * but I reach the conclusion that Ah Kwai is the son of Young Yick by relying on the testimony of a witness who testified via deposition and for whose veracity the government, of course, vouches for, to-wit, the testimony of Young Hun Sun. He testified quite definitely and clearly that Young Ah Kwai was the son of Young Yick * * * As I have said, this witness Young Hun Sun is regarded by the Court as the most reliable witness in the case, for he has no interest in the litigation. * * * but the one and only disinterested and reliable witness in this case, Young Hun Sun, in his deposition positively says that Ah Chor [appellant] is not the son of Young Yick but the son of one of Young Yick's brothers. * * * "
These remarks of the trial court, and the findings of fact and conclusions of law set forth supra demonstrate that in arriving at the judgment in this case the trial court relied entirely upon the erroneous-

ly admitted testimony. Therefore, there can be no question as to its prejudicial effect.

The judgment of the district court is reversed and the case remanded to the district court with directions to grant appellant a new trial.