No. 18,830.

GEORGE DONALD EPPLE *v.* FIRST NATIONAL BANK OF GREELEY, EXECUTOR.
(352 P. [2d] 796)

Decided June 6, 1960.

Mr. Joseph D. Neff, Mr. A. E. Small, Jr., for plaintiff in error.

Mr. Hubert D. Waldo, Jr., Messrs. Southard & Southard, Mr. Louis C. Reiker, for defendant in error.

*In Department.*

Per Curiam.

Plaintiff in error filed his petition in the Weld County Court on December 20, 1957, alleging that on June 24, 1957, said court entered its order admitting to probate a certain instrument purporting to be the Last Will and Testament of Andrew A. Epple, Deceased, and that said court on said day appointed defendant in error First National Bank of Greeley as executor. Petitioner alleged that he was a grandson and one of the heirs at law of deceased and as such was interested in said will and the estate of deceased. The executor filed its answer denying the allegations of the petition and denying that petitioner was a grandson or heir at law of deceased. Thereafter on January 13, 1958, the court, pursuant to motion by the executor, entered an order that the issues as to whether the petitioner was a grandson and heir of Andrew A. Epple, deceased, and as such qualified to contest the will of said deceased, be tried and determined as a separate issue.

Upon trial of such issue the court, after elaborate and extensive findings, entered judgment that the petitioner was not the grandson or an heir at law of the deceased and was not a person qualified to contest said will. Appeal was taken to the district court where upon trial *de novo* the same result obtained. Motion for new trial was denied.

The real issue in the case is whether George Epple, father of the petitioner, is a son of deceased. At both trials an exhibit in words and figures as follows was admitted:

"ESTATE EX. 3
13739

"STATE OF COLORADO ⎫
COUNTY OF WELD      ⎬ ss.
                   ⎭

### A F F I D A V I T

"Mary Epple, residing at Greeley, Weld County, Colorado, and whose *past* office is RFD No. 2, Greeley, Colorado, being first duly sworn, on her oath, deposes and says:

"That she is the natural mother of George Epple, a boy who was seventeen years of age on August 16th, 1920; that on February 18th, 1920, said George Epple enlisted in the United States Military Service, and is now serving as a member of Troop K, 15th U.S. Cavalry, at Ft. Russell, Wyoming. Said George Epple was born at Bacu, Russia, on the 16th day of August, A.D. 1903, being the son of myself, your affiant, and my former husband, Alexander Saief; that Alexander Saief was a Russian subject, and upon your affiant's marriage to Andy Epple, of Greeley, Colorado, my said son George took the name of 'Epple.'

"Your affiant further says that the said George Epple is of immature years and is a minor, and did not have the consent of your affiant when he enlisted in the United States Military Service.

"WHEREFORE, your affiant respectfully requests that an hono*rably* discharge from Military Service be granted the said George Epple.

"Subscribed and sworn to before me this 23rd day of October A.D. 19" (remainder obliterated).

"My commission expires Feb. 24th, 1924.

"Notary Public" .

John W. Henderson, an attorney at law of Greeley, Colorado, testified that he had known Mrs. Mary Epple and Andy Epple prior to 1924; that from 1917 to 1935 he was chairman of the Home Services Section of the Weld County Chapter of the American Red Cross and aided various people in their problems during the first World War; that Mrs. Mary Epple, who was deceased at the time of this trial, came to him in his capacity as Chairman of the Red Cross Home Services Section with the result that witness prepared an affidavit of which Exhibit 3 is a carbon copy, the original of which was signed and sworn to before said John W. Henderson as a notary public and delivered to said Mary Epple. The witness Henderson testified that he did not know where the original of the affidavit was and had made no effort to find it. Petitioner objected to the admission of the exhibit for the following reasons:

The reception of said exhibit in evidence would violate the following provisions of C.R.S. '53 52-1-14:

"Whenever in the progress of any suit in any court in this state, either party thereto shall rely for its maintenance or defense, in whole or in part, on any * * * writing alleged to have been executed, signed or written by the adverse party, and to have been lost or destroyed, the party so relying on the same as evidence in his behalf in the trial of the cause shall not be permitted to give evidence of the contents thereof by a competent witness or witnesses, until said party, his agent or attorney, shall first make oath to the loss or destruction thereof, and to the substance of the same."

Admittedly the reception of secondary evidence of the contents of a writing in the absence of a showing that the original is unavailable is error. However, neither the statute nor the rule excluding secondary evidence is applicable here.

The general rule in matters of pedigree is stated by the United States Supreme Court in *Fulkerson v.*

*Holmes*, (1885), 117 U.S. 389, 29 L. Ed. 915, 6 S.C. 780, as follows:

"* * * The proof to show pedigree forms a well settled exception to the rule which excludes hearsay evidence. * * * The rule is that declarations of deceased persons who were *de jure* related by blood or marriage to the family in question may be given in evidence in matters of pedigree. * * * A qualification of the rule is, that, before a declaration can be admitted in evidence, the relationship of the declarant with the family must be established by some proof independent of the declaration itself. * * * But it is evident that but slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy."

The witness Henderson was a competent witness to testify as to what Mary Epple told him for the purpose of preparing the affidavit. The carbon copy of the affidavit, identified by him as a true copy of the original, furnished the exact wording of the sworn statement of Mary Epple with respect to the ancestry of petitioner. No prejudicial error resulted from receiving a copy of the affidavit rather than compelling the witness to testify from memory.

No good purpose would be served by detailing the evidence in this case. We deem it sufficient to say that it amply sustains the findings of fact, conclusions and judgment of the trial court. In view of our conclusion, other questions raised in the briefs and argument need not be considered.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON, MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.