Thomas O'CONNOR, Plaintiff, Appellant,

v.

VENORE TRANSPORTATION COMPANY, Defendant, Appellee.

No. 6588.

United States Court of Appeals
First Circuit.

Dec. 6, 1965.

Nathan Greenberg, Boston, Mass., for appellant.

Hiller B. Zobel, Boston, Mass., with whom Robert J. Hallisey, Francis H. Fox and Thomas H. Walsh, Jr., Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, HASTIE * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

This action was brought by one Thomas O'Connor under the Jones Act for injuries sustained by him while working as a seaman on defendant's vessel. The complaint sets forth counts in negligence, unseaworthiness, and for maintenance and cure. By agreement of the parties the question of maintenance and cure was left to the trial judge and he found for the defendant on this issue. The jury found for the plaintiff on the other two counts and rendered a verdict for $2500. Thereupon the court entered judgment in this amount.

On appeal plaintiff contends that he was prejudiced by the trial court's ruling permitting defendant to question him concerning his income and his income tax returns. He further contends that the court erred in finding for the defendant on the question of maintenance and cure.

Plaintiff testified that he was injured on or about April 15, 1964, when his head struck a protruding wire from an overhead pipe band-it while working on defendant's vessel. He stated that he was walking to the machine shop when the accident occurred and that the wire "went through [his] head and knocked [him] back" causing bleeding and dizziness. He further testified that he suffered from dizzy spells and severe headaches and was unable to work for three weeks.

On May 4, 1964, the U. S. Public Health Service Hospital at Panama found him fit for duty and he resumed his regular duties for the rest of the voyage which ended on May 26, 1964. The plaintiff also received treatment at the U. S. Public Health Service Hospital in Brighton, Massachusetts. He was first treated there as an outpatient from June 11 to August 20, 1964 and as an inpatient from that date to September 1, 1964, when he was released as "fit for full duty." Plaintiff was paid $544 for maintenance covering the period he received treatment as an outpatient. O'Connor states that he was treated by a Doctor McDonald from September 9 to October 22, 1964. His claim for maintenance and cure and medical bills is for the period between his discharge from the hospital on September 1 to October 22, 1964, when he was released by his own doctor.

During the trial, defendant's counsel sought to impeach the plaintiff's credibility in several respects. Plaintiff testified that "the wire went through my head" and caused "a gash right down the center of my head;" but on cross examination he admitted that no stitches were necessary and there was no mark or scar anywhere. He claimed that aboard the vessel he was having dizzy spells and severe headaches, yet on cross examination he admitted that after the accident he refused to go to the ship's hospital and that frequently he drank champagne and played cards late at night. Also his testimony that it was dark in the area where the accident occurred was contradicted by testimony of the ship's officers that a 150 watt bulb in the area was lit both before and after the accident.

In cross examination defendant also sought to elicit information from the plaintiff with reference to his income tax returns for the purpose of impeaching his credibility. The plaintiff had testified on direct examination that he was a merchant seaman and stated on cross examination that he never was anything other than a seaman. The plaintiff's income tax return for 1963, a portion of which the court read to the jury,[1] [over

* Sitting by designation.

1. "THE COURT: I'l short cut it by saying that on these Un ted States individual Income Tax Returns for the fiscal calendar year 1963 according to his own declaration, the employers' names to whom he received compensation were City Service of Massachusetts, $2,448.05; Isaac

plaintiff's objection] showed that he had been employed in other capacities. When examined further about his various employments he admitted that in 1963 he had also been employed by the New England Airlift Company from which he had received income of about $3300. Neither the name of this company nor the amount of $3300 appeared on plaintiff's tax return.

Plaintiff objected to this "entire line" of questioning contending that it was irrelevant and prejudicial. The court in admitting this evidence stated: " * * * it's relevant because it's on the issue of credibility and it's also relevant as to other kinds of work that he can do. It's my opinion that the jury is entitled to hear this testimony, and I will over-rule your objection."

■■ One of the purposes of cross examination is to test the credibility of the witness and, subject to the judge's control, "that cross-examination may go rather far." United States v. Lowe, 234 F.2d 919, 922 (3d Cir. 1956). The extent to which counsel may go in such an attempt to discredit the veracity of the witness is a matter peculiarly within the discretion of the trial judge. And his action will not be interfered with unless there has been a plain abuse of discretion. Young Ah Chor v. Dulles, 270 F.2d 338, 342 (9th Cir. 1959); United States v. Bender, 218 F.2d 869, 874 (7th Cir. 1955); United States v. Lawinski, 195 F.2d 1, 7 (7th Cir. 1952).

■ We cannot say that the cross examination permitted by the trial court with reference to plaintiff's income and income tax return constitutes an abuse of discretion. Inasmuch as the accident was unwitnessed and all of plaintiff's symptoms were subjective, the issue of plaintiff's credibility or veracity was crucial.

■ Furthermore, even if the trial court had erred in permitting such questioning, an examination of the entire record shows that it was harmless error since the plaintiff's credibility was otherwise impeached in several respects. See Camps v. New York City Transit Authority, 261 F.2d 320, 323 (2d Cir. 1958).

■■ On the question of maintenance and cure, the trial court based its decision on findings which are clearly supported by the evidence.[2] It is fundamental that in reviewing a judge-tried issue, we are not to substitute our judgment for that of the district court, Evans v. United States, 319 F.2d 751, 753 (1st Cir. 1963), but may reverse only where, upon a consideration of the entire record, we are "left with a definite and firm conviction that a mistake has been committed." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954).

■ This court will not reverse unless the judgment below was "clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

---

Blair Company, seventy eight dollars; Bay State and Company, Boston, $18.48; and there are certain other items in connection with this return which either have no possible concern to the jury in this case."

2. "The injury was so far as the breaking of flesh was concerned relatively minor because no scar is left today and there never was any need so far as the appearance, of any stitching. * * *

"I'm satisfied from the evidence that he at once was able to play cards, to stay up late, and in general was able to carry on recreational activities. And other indicia of his habits with respect to drink would not warrant him in recovering a

single day of maintenance after the end of the voyage; and he did receive maintenance, of course, during the whole time of this voyage.

"With respect to cure which means medical care: the plaintiff received at the Public Health Hospital at Panama and in Boston most of what he needed, if he needed anything or any medical assistance. Attention has been drawn to the fact that Dr. Maxwell McDonald rendered as Dr. McDonald claims treatment amounting to $145. I frankly do not believe that Dr. McDonald did render treatment; but the issue is moot because $145 of Dr. McDonald's bill is more than covered by the amount heretofore paid for cure and maintenance. * * *"

Evans v. United States, supra, Fed.R. Civ.P. 52(a), 28 U.S.C.

Upon a careful review of the entire record in this case we cannot say that the judgment below was "clearly erroneous."

Affirmed.